STEVEN ROGENSKI, Plaintiff-Appellee, *v.* THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF MOLINE *et al.*, Defendants-Appellants.

(No. 71-129;

Third District—July 10, 1972.

Curtis Trevor, of Moline, (Walter Wellman, of counsel,) for appellants.

Dorothea O'Dean and Stewart Weinstein, both of Rock Island, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Rock Island County, Illinois, entered in administrative review proceedings, which reversed a decision of the Board of Fire and Police Commissioners of the City of Moline, Illinois, which had found Steven Rogenski guilty of a number of charges made against him and had ordered his discharge from his position as Captain and as a member of the Moline police department.

The charges against Captain Rogenski were filed shortly after the evening of April 10, 1969, when an extended conversation he had with a friend in the squad car he was driving was inadvertently transmitted over the car's police radio. The friend was Martha Van Poucke, an elderly woman whom he had known for many years, and who had sought his assistance in finding the son of a friend of hers, who had abandoned his wife and children and was thought to be probably at some tavern. They rode together in the squad car for about an hour

that evening, while making an unsuccessful search for the other friend's son. During this time the radio microphone in the squad car was stuck and although they did not know it, they were on the air.

The conversation between Captain Rogenski and Martha Van Poucke faded in and out and most of it was difficult to receive, but portions were heard clearly by various persons at the Moline police station and in other squad cars. A mayoral election was imminent, and Captain Rogenski was heard to cast aspersions on the racial ancestry of the wife of one of the candidates, and to speculate on the margin by which that candidate would win despite his wife's being a handicap. He and Mrs. Van Poucke also talked about various other persons they both knew. One of those persons was a relatively new member of the police force, and Captain Rogenski commented on his satisfactory progress. During the conversation Captain Rogenski used "damn," "hell," and perhaps other swear words, but the record indicates that more frequent and more varied expressions of this type came from Mrs. Van Poucke. It was she, too, who enlivened the talk about local politics by describing another of the candidates as a moron. Other remarks were also overheard which are not pertinent to the charges before us.

Charges placed against Captain Rogenski were that he permitted an unauthorized person to sit in a police department vehicle in violation of General Order 9 of the Moline chief of police; that he discussed politics with Mrs. Van Poucke in violation of Rule 2 of the Moline police department's Rules and Regulations; that he engaged in gossip with her in violation of Rule 2; that he neglected his duties in violation of Rule 4(11) by leaving the transmitter switch open in the police vehicle he was occupying and thereby interfering with police radio traffic for approximately an hour; that he used coarse language and profanity in violation of Rules 8, 4(14), and 4(16); and that he gave information relating to police matters to Mrs. Van Poucke in violation of Rule 23.

Supplemental charges were later filed against Captain Rogenski, and second supplemental charges thereafter, but all of these were dismissed by the Board of Fire and Police Commissioners except one. This was a charge that Captain Rogenski had neglected his duties on or about September 25, 1964, in violation of Rule 4(11) by reprimanding and criticizing a Moline policeman, David Millett, for investigating gambling and attempting to make an arrest for possession of barrel of fun tickets. On this occasion David Millett had entered a crowded tavern to investigate an oral complaint that gambling was taking place there, had tried unsuccessfully to force his way behind the bar to confiscate evidence of gambling, was told by the proprietor and various hostile patrons that he needed a search warrant, and had then left for this purpose. An hour

later he received a telephone call from Captain Rogenski, inquiring about the incident, saying that the proprietor had three persons who would testify that he had pushed the proprietor around for no reason at all, and perhaps adding that a written complaint should have been obtained before he entered the tavern. David Millett later admitted, at the hearing before the Fire and Police Commissioners, that he had needed a search warrant; that he feared perjured testimony would follow if he made an arrest; that he did nothing thereafter about getting a warrant; and that all Captain Rogenski did was to call him on the telephone and make the few remarks just described.

● 1 The Board of Fire and Police Commissioners found Captain Rogenski guilty of all of the original charges and the one supplemental charge relating to David Millett, and ordered his discharge. Captain Rogenski then filed a complaint for administrative review in the Circuit Court of Rock Island County. The City of Moline and the Board both filed motions to dismiss, contending that the city attorney who had filed all the charges before the Board should have been made a party to the administrative review proceedings rather than the City of Moline. The Circuit Court found that the city attorney had acted as a representative of the City throughout the proceedings before the Board, and therefore his principal, the City of Moline, rather than he, its representative, was a necessary party. The Court accordingly denied both the motions. We agree with the reasoning of the Circuit Court on this point and find no error in its disposition of the two motions.

■ The Circuit Court then gave consideration to the merits of the various charges against Captain Rogenski, commencing with the supplemental charge that he was guilty of "neglect or inattention to duty" because of his reprimanding and criticizing David Millett. It determined that the Board's finding that the Captain was guilty of this charge was not supported by the evidence and was contrary to the manifest weight of the evidence. We agree. It appears clear to us that Captain Rogenski's reported remarks to David Millett on his one-man gambling raid did not show the former to be guilty of neglect or inattention to duty, but might rather be considered evidence of his carrying out a duty to instruct a less experienced policeman on the handling of a difficult situation. The record shows no more than this, and we therefore concur with the Circuit Court's finding with respect to this charge.

■■ The Circuit Court next turned to the first of the original charges filed. It concluded that the Board's finding that Captain Rogenski had violated General Order 9, which stated that "officers will not permit citizens or other unauthorized persons to sit in departmental vehicles," was also unsupported by the evidence and against the manifest weight

of the evidence. At the hearing before the Board it was disclosed that General Order 9 went on to provide: "In certain extraordinary situations, deviations from the policy outlined in paragraph above may be allowed. This deviation must be authorized by a Command or Supervisory Officer." It was not disputed that Captain Rogenski had the rank to allow a deviation. Furthermore, the deviation had a purpose related to the duties and responsibilities of a policeman, as in *Lindeen v. Illinois State Police Merit Board*, 25 Ill.2d 349, 353. We therefore agree with the Circuit Court's finding with respect to this charge also.

■■ The Court also found no support for the Board's finding that Captain Rogenski was guilty of violating that portion of Rule 2 which read: "All members of the police force are strictly prohibited * * * from discussing politics * * *." We agree that the right to discuss political candidates, as did Captain Rogenski and Mrs. Van Poucke, cannot be abridged by Rule 2. In *Mills v. Alabama*, 384 U.S. 214, the United States Supreme Court declared: "Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes." In *Simcox v. Board of Education of Lockport Township High School, District No. 205, Will County, Illinois*, 443 F.2d 40, the court stated: "A public employee cannot be discharged or otherwise penalized because of his exercise of the right of freedom of speech as guaranteed by the First Amendment to the Constitution of the United States." In another case the United States Supreme Court said: "We conclude that policemen, like teachers and lawyers, are not relegated to a watered-down version of civil rights." (*Garrity v. State of New Jersey*, 385 U.S. 493.) Therefore the Board's finding on the charge of "discussing politics" cannot stand.

■■ On the other hand, the Circuit Court upheld the finding that Captain Rogenski was guilty of violating that portion of Rule 2 which prohibited "engaging in gossip with citizens." We believe this language is invalid for impermissible vagueness; a policeman cannot know precisely at what point casual conversation must stop if it is not to be described as gossip. "When one must guess what conduct or utterance may lose him his position," the prohibition cannot stand. (*Keyishian v. Board of Regents*, 385 U.S. 589.) The Board's finding of guilt based on this portion of Rule 2 cannot be sustained.

■■■ The Circuit Court found that there was no support for the Board's findings that Captain Rogenski had violated Rule 4(16), which

prohibited "using coarse or insolent language * * * to a citizen," and Rule 23, which did not allow members of the police department to "give information of any kind in relation to police matters." The Court considered Rule 4(16) to apply to a policeman's official relationship with others, prohibiting his being abusive in his role as policeman, and it considered Rule 23 not to extend to innocuous comments of the kind made regarding the satisfactory performance of the new member of the force. We agree with the Circuit Court's interpretation of these two rules, and so need not consider whether they, too, may not be impermissibly vague or overbroad.

■■■ The Court concluded, from the testimony as to Captain Rogenski's language, that there was sufficient evidence of the Captain's being guilty of having violated Rule 8 ("He must at all times refrain from harsh, violent, coarse, profane or insolent language, and at the same time when required act with firmness and sufficient energy to perform his duty") and Rule 4(14) (proscribing "Conduct unbecoming an officer and gentleman"). We believe that these rules, also, should be considered as applying only to a policeman's behavior in public, and as not extending to a private conversation which is not intended to be overheard. If construed to apply to the latter, the rules would fall within the sweep of *Muller v. Conlisk*, 429 F.2d 901, which struck down a rule of the Chicago police department with these remarks: "Thus it is clear that the First Amendment would reach and protect some speech by policemen which could be considered 'derogatory to the department.' Rule 38 on its face prohibits all such speech, even private conversation, and is for that reason unavoidably overbroad in violation of the First Amendment as it applies to the states through the Fourteenth Amendment." Furthermore, it is evident that the allegedly profane words were not spoken with an intent to disturb or offend Mrs. Van Poucke, the only hearer of which Captain Rogenski was aware, and so for lack of this intent, also, the language the Captain used should not be considered as within the meaning of Rule 8 or Rule 4(14). *Karp v. Collins*, 310 F.Supp. 627.

■■ This leaves for consideration only the charge that Captain Rogenski was guilty of "neglect or inattention to duty" because he left the transmitter switch on in his police car for an hour and thereby interfered with police radio traffic, and also the question whether his being guilty of this would warrant his discharge. The Board made no findings of fact to establish precisely in what way the Captain was at fault. There was evidence that the microphone was defective, and that the red warning light indicating when it was in operation was positioned where it could be obscured by the driver's knee. We believe specific fiindings of fact should have been made. *Sudduth v. Board of Fire & Police Comm'rs of*

*the City of Rockford,* 48 Ill.App.2d 194, 294. See also *Vahle v. Zoning Board of Appeals of the City of Canton,* 97 Ill.App.2d 165; *International Harvester Co. v. Zoning Board of Appeals of the City of Chicago,* 43 Ill.App.2d 440, 448-49.

 Specific findings of fact relative to the ways in which Captain Rogenski was guilty of neglect or inattention to duty would have helped a reviewing court to decide whether removal from office was an appropriate penalty, or on the contrary, was arbitrary or unreasonable. It is established that the authority given a board of fire and police commissioners to remove for cause is not an arbitrary one but is to be exercised on just and reasonable grounds, and, further, that "cause" means some substantial shortcoming which renders the continuance of the officer in his office detrimental to the discipline or efficiency of the service. (*Fantozzi v. Board of Fire and Police Commissioners of the Village of Villa Park,* 27 Ill.2d 357.) We were not given findings to aid us in applying the rules of *Fantozzi.* Nevertheless, from our review of the record we find that there is no substantial evidence to support this last charge. We therefore affirm the judgment of the Circuit Court.

Judgment affirmed.

STOUDER, P. J., and SCOTT, J., concur.