THOMAS CHIGAROS, Petitioner-Appellant, *v.* MORGAN F. MURPHY *et al.*, Respondents-Appellees.

(No. 59826; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

First District (3rd Division)—April 3, 1975.

Joseph V. Roddy and Patrick Driscoll, Jr., of Tully and Roddy, of Chicago, for appellant.

Richard L. Curry, Corporation Counsel, of Chicago (Daniel Pascale, and Lucia T. Thomas, Assistant Corporation Counsel, of counsel), for appellees.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

After a hearing before the Chicago Police Board (hereinafter sometimes referred to as Board), petitioner Thomas Chigaros was found guilty of violating Chicago Police Department Rules 2, 13 and 22 and was discharged from his position as a patrolman with the Chicago Police Department. Petitioner appealed to the circuit court of Cook County, which confirmed the Board's finding as to Rules 2 and 22 and set aside the Board's ruling as to Rule 13. Petitioner now appeals the circuit court's

confirmance of the Board's finding that petitioner violated Rules 2 and 22. Respondent Chicago Police Board has not appealed the circuit court's ruling setting aside the Board's finding that petitioner violated Rule 13.

Petitioner makes the following contentions on appeal: (1) there is no support for the Board's finding that the petitioner impeded the Police Department's efforts to achieve its goals by refusing to cooperate in its investigation; (2) the application of Rule 22 of the Chicago Police Department pertaining to this petitioner amounts to his deprivation of rights without due process of law; (3) the Board erred in denying the petitioner's motion to dismiss; (4) the hearing officer who heard petitioner's case was not properly qualified; and (5) the Board erred in denying the petitioner's motion *in limine*.

We affirm in part, reverse in part, and remand with directions.

At approximately 1:30 A.M. of December 19, 1971, Chicago police officers John McCue and Richard Murphy were on duty in their patrol car in the vicinity of 38th and Wallace Streets in Chicago, Illinois. At this time the officers observed a truck and an automobile which was trailing behind the truck and which appeared to be "involved" with the truck. The officers described the automobile as a 1969 Cadillac having license number 583 098. When the truck proceeded to go through a stop sign without stopping, the officers turned on their Mars light and gave chase, at which point the trailing automobile pulled over to the side of the road allowing the police car to pass. Although the driver of the truck escaped on foot, the officers apprehended the truck and subsequently discovered that it had been involved in a robbery.

The license number of the automobile was then traced to a 1969 Cadillac owned by petitioner, Officer John Chigaros. Officer Chigaros stated that he had been the owner of a 1969 Cadillac with the license number 583 098, but that he had traded in this Cadillac for a 1972 Oldsmobile. Officer Chigaros further stated that he had transferred the license plates from the Cadillac to his new Oldsmobile. Although Officers Murphy and McCue had previously described the automobile in their report as a 1969 Cadillac, they both identified Officer Chigaros' Oldsmobile as the automobile that they had seen the night of the incident.

Shortly after the license number was traced to Chigaros, Officer Callahan from Area 3 Burglary was sent to Chigaros' house at approximately 3 A.M. on December 19, 1971. Looking for a Cadillac or a car with the license number 583 098, Callahan checked Chigaros' driveway and garage and the street in front of Chigaros' house. Finding no Cadillac or car bearing such a license number, Callahan rang the front and rear doorbells to Chigaros' house and received no answer.

Shortly after 8 A.M. the morning of the incident, John Haberkorn, Com-

mander in Chief of the 9th District, telephoned Chigaros three times and only the third time did Chigaros answer the phone. Chigaros explained that he was a heavy sleeper and had probably slept through the first two calls. When Chigaros answered the phone, he explained his car was outside his house and that his license plates were on his car.

Later Chigaros made a statement under oath concerning his whereabouts and the whereabouts of his automobile at the time of the incident. In his statement, Chigaros indicated that at 5 P.M. the afternoon before the incident, he parked his car a few doors north of his house; that he did not use his car until 9 A.M. the next morning when he went to the police station; that at 9 A.M. he found his car parked in approximately the same spot that he had parked it the previous afternoon; and that he had no knowledge of anybody using his car between 5 P.M. and 9 A.M. Chigaros further indicated in his statement that he was fixing his basement the evening before the incident, and that he did not leave his house between 5 P.M. the day before the incident and 9 A.M. the day of the incident.

The van that Officers McCue and Murphy apprehended was subsequently connected with the robbery of Commercial Delivery Service, a trucking company located at 3333 West 36th Place. The watchman on duty the night of the robbery testified that three armed men entered his office wearing ski masks, ordered him to "freeze," and forced him to sign certain freight bills for freight on the dock. Later, at a voice showup, the night watchman identified Officer Chigaros' voice as "possibly" the voice of one of the men involved in the robbery.

After considering all the above evidence, the Chicago Police Board entered the following findings:

"The Board, after considering all of the evidence and testimony presented in the case, thus finds that the respondent as charged herein, contrary to the rules and regulations of the Department of Police, is guilty of violating Rule 2, 'Any action or conduct which impedes the Department's efforts to achieve its goals, or brings discredit upon the Department,' in that on December 19, 1971, respondent's automobile was observed in the vicinity of an armed robbery under suspicious circumstances, and when requested by commanding and investigating officers to cooperate in their investigation, by explaining the presence of his vehicle he did refuse to do so, thus impeding the Department's efforts to achieve its goals.

Respondent, as charged herein, contrary to the rules and regulations of the Department of Police, is guilty of violating Rule 13, 'Making a false report, written or oral,' in that on December 21,

1971, the respondent gave a signed statement in regard to the whereabouts of his automobile in December 19, 1971, which statement was false and untrue.

Respondent, as charged herein, contrary to the rules and regulations of the Department of Police, is guilty of violating Rule 22, 'Failure to obey Department orders concerning other employment, occupation or profession,' in that the respondent had, during the month of December, 1971, self-employed secondary employment, and did not have on file with the Department a current approved request for such secondary employment."

Petitioner's first contention concerns the Police Board's finding that petitioner violated Rule 2 "in that on December 19, 1971 * * * [his] automobile was observed in the vicinity of an armed robbery under suspicious circumstances, and when requested by commanding and investigating officers to cooperate in their investigation, by explaining the presence of his vehicle he did refuse to do so, thus impeding the Department's efforts to achieve its goals." Petitioner contends that this finding is without support.

It is clear from the record that the petitioner did everything requested of him concerning the investigation of the robbery. When requested to come to the police station with his automobile, petitioner came immediately. Several days after the incident, petitioner submitted to a voice showup and further gave a sworn statement concerning his whereabouts and the whereabouts of his automobile at the time of the incident. Indeed, Chigaros' commanding officer answered affirmatively when asked at the hearing "at no time did * * * [Chigaros] not try to explain the presence of the automobile, whether orally or in written form, he cooperated with you and he gave you a written statement * * *?"

As indicated by the Board's finding, the finding that petitioner violated Rule 2 is specifically based upon the Board's conclusion that petitioner's automobile was observed in the vicinity of an armed robbery under suspicious circumstances and when asked to cooperate in the investigation by explaining the presence of his vehicle, petitioner refused to do so. However, the petitioner gave a sworn statement concerning the whereabouts of his vehicle at the time of the robbery. If it could be said that the information contained in Chigaros' statement concerning the whereabouts of his automobile were false, then, we believe there would be support for the Board's finding that Chigaros did not cooperate with the Police Department's investigation. However, the veracity of the statements contained in Chigaros' report has already been considered and is not up before us on appeal. Along with its finding that petitioner violated Rules 2 and 22, the Board found that Chigaros violated Rule 13 "by

making a false report * * * in regard to the whereabouts of his automobile in [sic] December 19, 1971, which statement was false and untrue." Petitioner appealed the Board's finding as to Rules 2, 22 and 13 to the circuit court which affirmed the Board's finding as to Rules 2 and 22 and set aside the Board's finding as to Rule 13. Respondent has not appealed the circuit court's ruling setting aside the Board's finding that petitioner violated Rule 13, and consequently we cannot say that the statements contained in Chigaros' report concerning the whereabouts of his automobile are false.

■■ The standard to be used in reviewing the findings of an administrative agency is whether or not such findings are against the manifest weight of the evidence. (*Taylor v. Civil Service Com.* (1961), 33 Ill.App. 2d 48, 178 N.E.2d 200; *Kerr v. Police Board* (1974), 59 Ill.2d 140, 319 N.E.2d 478.) Considering respondent's failure to appeal the circuit court's ruling setting aside the Board's finding as to Rule 13 and the fact that Chigaros did everything requested of him during the Police Department's investigation, we can only conclude that the Board's finding that petitioner violated Rule 2 is against the manifest weight of the evidence and must be reversed.

■■ Petitioner's second contention concerns the Board's finding that petitioner violated Rule 22 " 'failure to obey department orders concerning other employment, occupation or profession,' in that the officer had, during the month of December, 1971, self-employed secondary employment, and did not have on file with the department a current approved request for such secondary employment." Petitioner contends that the finding that he violated Rule 22, as applied to his particular factual situation, amounts to a denial of his rights without due process of law. It is true that Chigaros had secondary employment and did not have on file a current approved request for such secondary employment. However, it is also true that Chigaros had previously had on file an approved request for such secondary employment and that such approval had expired approximately 1 month before the incident. Furthermore, there is no evidence that Chigaros wilfully permitted his permit for secondary employment to lapse. As stated in *Fantozzi v. Board of Fire and Police Commissioners* (1963), 27 Ill.2d 357, 360, 189 N.E.2d 275:

> "The authority given the Board of Fire and Police Commissioners to remove only for cause is not an arbitrary one, but is to be exercised on just and reasonable grounds. The record must show the board's order is based upon evidence fairly tending to sustain it. As was stated in *Murphy v. Houston*, 250 Ill.App. 385, at 394: 'While it is true that it is for the Commission to decide what is cause for removal, it may not make an arbitrary and unreason-

able rule in this respect. In *Andrews v. King*, 77 Me. 224, a statute provided that an employee might not be removed except for cause. The court held cause to mean some substantial shortcoming which renders continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place. This statement of the rule seems to be in harmony with the authorities.'" (See also *Fahey v. Cook County Police Department Merit Board* (1974), 21 Ill.App.3d 579, 315 N.E.2d 573, and *Rogenski v. Board of Fire and Police Commissioners* (1972), 6 Ill.App.3d 604, 285 N.E.2d 230.)

Considering the fact that Chigaros had on file an approved permit which had expired only 1 month before the incident and the fact that there is no showing that Chigaros wilfully permitted this permit to expire, we conclude that Chigaros' violation of Rule 22 is not sufficient cause under the rule in *Fantozzi* for dismissal from the Police Department. Although we affirm the circuit court's confirmance as to Rule 22, we remand the cause to the circuit court of Cook County so that a penalty consistent with the gravity of Chigaros' violation of Rule 22 be imposed.

Having reversed the circuit court's confirmance of the Board's finding that petitioner violated Rule 2, and having remanded the cause as to Rule 22 so that a penalty consistent with the gravity of the offense be imposed, we see no necessity for considering petitioner's other contentions.

Accordingly, the cause is affirmed in part, reversed in part, and remanded to the circuit court of Cook County for proceedings consistent with this opinion.

Affirmed in part; reversed in part; and remanded with directions.

DEMPSEY and MEJDA, JJ., concur.