ADAMS v. GRAND TRUNK WESTERN RAILROAD CO.

1. RAILROADS—CONTRIBUTORY NEGLIGENCE—GROSS NEGLIGENCE—
WATCHMAN.
Failure of railroad company to keep watchman at crossing to
warn public of approaching trains was not gross negligence
excusing contributory negligence of 12-year old boy who was
injured while attempting to cross between two freight cars.

2. SAME—SUBSEQUENT NEGLIGENCE.
In absence of claim that members of crew saw 12-year old boy
attempting to cross tracks between two freight cars of stand-
ing train, railroad company was not guilty of gross or subse-
quent negligence in starting train without warning, resulting
in injury to boy.

3. SAME—NEGLIGENCE.
Where 12-year old boy was guilty of contributory negligence in
attempting to cross between two freight cars of standing
train, and was injured when train started, railroad company
was not liable, in absence of showing that it was guilty of
gross or subsequent negligence.

Error to Wayne; Toms (Robert M.), J. Sub-
mitted October 29, 1930. (Docket No. 172, Calendar
No. 35,276.) Decided December 2, 1930.

Case by Albert Adams, an infant, by his next
friend, against Grand Trunk Western Railroad
Company and another for personal injuries. From
verdict and judgment for plaintiff, defendants bring
error. Reversed.

*George D. O'Brien,* for plaintiff.

*Frederic T. Harward* (*William W. Macpherson,*
of counsel), for defendants.

On violation of statute or ordinance in relation to blocking train
at crossing as affecting liability of injury, see annotation in 47
L. R. A. (N. S.) 820.

As to duty of railroad company to maintain flagman at crossing,
see annotation in 16 A. L. R. 1273.

Contributory neglige .ce in attempting to cross a train standing
on crossing, see annotation in 13 L. R. A. (N. S.) 1066; 34 L. R. A.
(N. S.) 466; 50 L. R. A. (N. S.) 1012.

BUTZEL, J.   Albert Adams, a bright young lad
of the age of 12 years and 3 months at the time this
cause of action arose, brought suit by next friend
against defendant railroad companies.   The names
of the Grand Trunk Western Railroad Company
and that of the Canadian National Railway appear
interchangeably as defendants in the pleadings.   De-
fendants make no objection.   The train and tracks
in question belonged to the Grand Trunk system.
The crossing is now protected by a viaduct which
was in process of construction at the time of the
accident.   A long string of freight cars was moved
each day by the Grand Trunk from one section of
the city of Detroit to the other, and crossed 25th
street about 6 p. m.   Albert's home was situated
four or five short city blocks from where the de-
fendants' railroad tracks crossed 25th street, and
he was familiar with them.   About 6 p. m. on the
25th day of June, 1925, Albert, with another lad,
found the 25th street crossing obstructed by a long
string of cars.   They desired to cross.   According
to Albert's testimony, the engine attached to the
cars was so far distant from where he attempted
to cross that he could not see it.   It was three or
four blocks from the crossing.   The train consisted
of 64 freight cars with an engine and caboose, was
approximately 2,465 feet in length and extended
over the crossings at 25th street and approximately
six or more streets in the immediate vicinity.   Both
the front and rear ends of the train were a long
distance from the 25th street crossing.   Albert
stated that he waited upwards of five minutes be-
fore attempting to cross between the cars; that
after seeing a number of men cross, either by climb-
ing over the top of the cars or over the couplings
between them, he attempted to cross between two

box cars by climbing over the couplings. Just as he was about to alight on the other side, the train started without a warning. The jerk from the sudden start caused him to fall and the train ran over his right leg. It had to be amputated above the knee.

At the time of the accident Albert had just completed the B fifth grade in the Detroit public schools and passed to the A fifth grade. He had taken an active interest in athletics and was a bright, normal boy. He admitted on cross-examination that at the time of the accident he fully appreciated the danger that he was taking in climbing between the cars.

The train was manned by a regular crew of five men, the conductor and rear brakeman being stationed in the cupola of the caboose, and the head brakeman, together with the engineer and fireman, was in the cab of the engine; this was where they belonged. There is no claim whatsoever that any of the crew saw Albert until after the accident occurred.

Negligence is claimed on the part of defendants in their failure to comply with an order of the Michigan public utilities commission directing that two watchmen be stationed at the 24th street and 25th street crossings to "warn the public of approaching engines and trains;" also in obstructing the highway by maintaining for an unreasonable length of time an idle train of cars, extending over a distance of several city blocks and starting the train without a warning or proper signal to persons using the highway. Under the ordinances of the city of Detroit, a public street or highway cannot be obstructed by a train for over five minutes, and fines and penalties are provided for in case of the violation of this law by the railroad company, en-

gineer, or conductor.  It is further claimed that the
negligence consisted of starting the train without
a proper signal or warning to persons using the
highway, and that defendants knew or should have
known the custom and practice of crossing cars at
said intersection.  In an additional count, plaintiff
further complains of gross negligence on the part of
defendants in doing or failing to do the things set
forth in the previous count.

The court instructed the jury that plaintiff was
guilty of contributory negligence, but that they
might consider whether there was any gross, wilful,
or subsequent negligence on the part of the defend-
ants.  The charge is quite lengthy.  The gist of it
in regard to gross negligence is that the jury might
consider whether defendants did discover or should
have discovered plaintiff's peril and thus have
avoided the accident after plaintiff's contributory
negligence occurred.  There is no testimony on the
part of plaintiff or his witnesses that he was even
seen by defendants' employees at any time until
after the accident occurred.  The testimony of de-
fendants shows that he was not seen until after the
accident.

Many of the claims of plaintiff are disputed, and
there are questions of admissibility of evidence.
Assuming, however, that all of the evidence was
properly admitted, and that the train did obstruct
the crossing for more than the time permitted by
law, that there was no watchman at the crossing,
that the train started without any warning or signal,
there, nevertheless, was no testimony of any gross
negligence.  Notwithstanding this, the jury ren-
dered a verdict in favor of plaintiff.

The conductor was watching the signal tower or
semaphore built up in the air a long distance from

the caboose and was waiting for the signal to proceed. The claim is made that his failure to see plaintiff and the others passing between the cars, and the starting up of the train without warning, constituted gross negligence. The 25th street crossing was not as far from the engine as the signal board. Plaintiff went between the cars, where he could not be seen. The order of the Michigan public utilities commission states that its purpose is to warn the public of approaching engines and trains. Albert needed no warning of the approach of the train, for he not only saw it but climbed on it. The failure to keep a watchman can not be deemed to be gross negligence. A semaphore or signal light may be seen from a very long distance both at day and nighttime. The fact that a conductor stationed in the caboose of a train could see this light up in the air, as the testimony shows, from a very long distance, would not make defendants or their employee guilty of wilful, wanton, reckless, or gross negligence in not watching people three or more blocks away, waiting at street crossings and detecting them crossing between cars. Naturally, any one crossing while between the cars would be hidden from the conductor's line of vision.

While one is deeply moved by the unfortunate accident to this young lad, he was guilty of contributory negligence, and there must be gross or subsequent negligence on the part of defendants in order to hold them responsible. The record fails to disclose any. Our attention is called to the case of *Battishill* v. *Humphreys,* 64 Mich. 514, where a child less than three years of age was some distance directly in front of the engine on a railroad track, and it was held that it was reckless negligence on the part of the lookout in not seeing the child. The

case of *Gibbard* v. *Cursan,* 225 Mich. 311, is also referred to. In this case plaintiff was seen in peril in ample time by defendant to avoid the accident. In the case of *Shindler* v. *Railway Co.,* 87 Mich. 400, also referred to by counsel for plaintiff, cars were shunted without warning across a highway where it was known that people were constantly passing. The facts in these cases are different from those in the present one. The cases of *Lahnala* v. *Railway Co.,* 192 Mich. 460, and *Nagy* v. *Railroad Co.,* 241 Mich. 134, are directly in point. In both of these cases boys met with accidents while attempting to cross over cars of a train that blocked a street crossing. We held that they could not recover. It is true that in these cases the claim of wanton, wilful, gross, or subsequent negligence was not made. In the present case, there is absolutely no testimony to support such a claim.

The judgment for plaintiff is reversed, with costs, and without a new trial.

Wiest, C. J., and Clark, McDonald, Potter, Sharpe, North, and Fead, JJ., concurred.