ERDEI v BEVERAGE DISTRIBUTION COMPANY

1. AUTOMOBILES—STATUTES—TRUNK LINE HIGHWAY—DUTY TO STOP.

The absolute duty to stop at an intersection with a state trunk-line highway is imposed only where the driver has notice that he is approaching a full-stop, trunkline highway controlled by a sign and not where the intersection is controlled by a traffic light; the latter such intersections are within the exception expressed in the statute and are covered by the "traffic light rule", rather than the "stop rule" (MCLA 257.651).

2. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—REASONABLE INFERENCE.

It is not reasonable to infer, for the purpose of finding contributory negligence, that the driver of one vehicle saw or should have seen a second vehicle at a time sufficiently before impact so that, in the exercise of due care, he could have prevented the collision, where there is no indication that the first driver observed or should have observed an inoperable traffic light at the intersection where the collision occurred, or that the light was not operating, or any indication of when the second vehicle would have become visible to someone in the first driver's position.

3. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—EVASIVE ACTION—INSUFFICIENT EVIDENCE.

The absence of skid marks and the force of impact alone are not sufficient evidence to find that the driver of one vehicle should have seen a second vehicle approaching an intersection in time to take evasive action or that the first driver was speeding.

4. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY
—QUESTION OF LAW.

Ordinarily the questions of negligence and contributory negli-

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Automobiles and Highway Traffic § 196.
  8 Am Jur 2d, Automobiles and Highway Traffic § 740 *et seq.*
[2] 8 Am Jur 2d, Automobiles and Highway Traffic § 906 *et seq.*
[3] 8 Am Jur 2d, Automobiles and Highway Traffic § 1001.
[4] 8 Am Jur 2d, Automobiles and Highway Traffic § 1002 *et seq.*

gence are for the trier of fact to decide, but the preliminary question of whether there is sufficient evidence from which jurors may reasonably infer negligence or contributory negligence is a question of law for the court.

Appeal from Wayne, James L. Ryan, J. Submitted Division 1 March 9, 1972, at Detroit. (Docket No. 10523.) Decided August 28, 1972. Leave to appeal denied, 389 Mich 754.

Complaint by Maxine Erdei, administratrix of the estate of Louis Erdei, against Beverage Distribution Company for negligence in the operation of one of defendant's trucks. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Ripple & Chambers* (by *Donnelly W. Hadden),* for plaintiff.

*Garan, Lucow, Miller, Lehman, Seward & Cooper* (by *Ronald C. Winiemko),* for defendant.

Before: Levin, P. J., and V. J. Brennan and Van Valkenburg,* JJ.

Levin, P. J. Plaintiff appeals from a jury verdict of no cause of action. We reverse because there was insufficient evidence to support a finding of contributory negligence and, therefore, that issue should not have been submitted to the jury.

Plaintiff's decedent, Louis Erdei, died of injuries suffered in a collision between his automobile and a trailer truck owned by defendant, Beverage Distribution Company, and operated by Irving James Keisel, defendant's employee. The collision occurred at approximately 4:30 a.m. on the morning of August 16, 1966, at the intersection of Pelham Road and Ecorse Road in the City of Allen Park.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The only witness to the accident was Keisel, the truck driver. His testimony tended to establish the following situation. There had been a severe thunderstorm earlier in the night and the roadways were still wet at the time of the collision. Keisel was driving along Pelham Road, a road which was part of his regular work route. He passed a sign which warned that the intersection with Ecorse Road was approaching.

When he was about 75 feet from the intersection, he noticed that the traffic lights at the intersection were not operating and, removing his foot from the accelerator, slowed from 35 to 30 miles per hour. He looked both ways as he entered the intersection, but failed to see any vehicle approaching. As the cab of the truck reached the far edge of the intersection he heard a crash, felt his truck shudder, and looking in the right side mirror, saw that an automobile had collided with the trailer. The hood of decedent's automobile had slipped under the body of the trailer at a point approximately ten feet back from the front end of the truck. The automobile was impelled for some distance in the same direction as the truck was traveling until the two vehicles came to a halt. Erdei died of injuries suffered in the collision.

I

Plaintiff first contends that the judge erred when he refused to give a requested charge that the truck driver was under an absolute duty to stop at the intersection of Pelham and Ecorse because Ecorse, the road on which Erdei was traveling, is a state trunk line highway. This request was based on § 651 of the Michigan Vehicle Code as it read following the amendment enacted by 1959 PA 151:

*"Except as otherwise provided in this section,* all vehicles approaching the intersection of a state trunk line highway shall come to a full stop before entering or crossing such highway and shall proceed with caution after yielding right-of-way to all vehicles on the intersecting highway which have entered the intersection or are so close as to constitute an immediate hazard. It shall be the duty of the state highway commissioner to erect 'stop' or 'yield right-of-way' signs at every entrance to a state trunk line highway from intersecting highways or streets. *No 'stop' or 'yield right-of-way' signs need be installed at intersections where approved traffic signals are used to control traffic".* (Emphasis supplied.)[1]

The request was properly denied. The absolute duty to stop at the intersection of a state trunk line highway is imposed only where the driver has notice that he is approaching a full-stop, trunkline highway. The statute provides for this notice by requiring the state highway commissioner to place "stop" or "yield right-of-way" signs at such intersections.[2] While a driver who knows, or should know, that he is approaching a stop intersection may properly be charged with notice that he should stop before entering the intersection even though the stop sign may be down or for some other reason not showing,[3] another principle applies in this case.

In the instant case the intersection was controlled by a traffic light. Such intersections are

[1] MCLA 257.651; MSA 9.2351, as it read before its amendment by 1966 PA 237, § 1, effective March 10, 1967.

[2] Cf. *Block v Peterson,* 284 Mich 88, 94 (1938).

[3] See *Bell v Crook,* 168 Neb 685; 97 NW2d 352 (1959); *Haagenson v Matanuska Valley Lines, Inc,* 103 F Supp 579 (D Alas, 1952); *Connors v Dobbs,* 66 NE2d 546 (Ohio App, 1945). Cf. *Gilliland v Ruke,* 280 F2d 544 (CA 4, 1960); *Seyfer v Gateway Baking Co,* 159 F Supp 167 (WD Ark, 1958), holding that there was no duty to stop where the driver was unfamiliar with the road and the stop sign was not in place.

within the exception expressed in the statute, for, clearly, had the traffic light been operating and the light facing Keisel green, he would have been under no duty to stop before entering the intersection even though he was crossing a trunkline highway. Where there is a traffic light the "stop rule" is replaced by the "traffic light rule."[4]

## II

We are of the opinion that there was insufficient evidence to support a finding of contributory negligence. While there was testimony that the truck driver saw that the traffic light was not working, there was no evidence from which the jury could properly infer that the decedent observed or should have observed the traffic light or that it was not operating. The setting deserves to be noted. It was a dark, stormy night. Not only the traffic light, but all the lighting at the intersection was out at the time of the accident. Merely be-

[4] See Anno, *Motorist's Liability for Collision at Intersection of Ordinary and Arterial Highways as Affected by Absence, Displacement or Malfunctioning of Stop Sign or Other Traffic Signal,* 74 ALR2d 242, § 5, p 275, and Later Case Service.

The District Court of Appeal of California said in *Damiani v Martinez,* 144 Cal App 2d 653, 657; 301 P2d 436, 439 (1956):

"It is not the law that because the traffic light controlling Holmes Avenue traffic was askew and not visible to defendant, he was under a duty enjoined by statute to come to a complete stop before entering Firestone Boulevard regardless of the directional signals of the lights then controlling east-west traffic thereon. No provision of the Vehicle Code [including § 552: 'The driver of any vehicle shall stop * * * at the entrance to a through highway * * * '] demands this. The reasonableness of defendant's conduct, under the particular circumstances then confronting him, in driving into a signal-controlled intersection without stopping, if he did so, was a question of fact for the jury to determine without reference to statutory rules that have been prescribed for an entirely different type of intersection. Granted that to enter an intersection controlled by electric traffic lights without knowing definitely the color of the light may be incompatible with the ordinary care required of a reasonably prudent man, that result does not flow from any violation of sections 577 or 552, which do not purport to cover the situation here presented."

cause the truck driver, proceeding along an accustomed route and warned by a sign that he was approaching this intersection, observed the inoperative traffic light does not permit the inference that the decedent, facing a different background, without a warning sign, proceeding along a route with which he may or may not have been familiar, should have seen the inoperative traffic light.

While the lights on the truck were operating, it does not appear when the truck would first have become visible to a driver proceeding west on Ecorse toward Pelham. The truck driver said that he did not see the decedent's automobile approaching. It would not be reasonable on this record to infer that the decedent saw or should have seen the truck at a time sufficiently before the impact so that, in the exercise of due care, he could have prevented the collision.

The language of the Michigan Supreme Court in *Berk v Blaha,* 384 Mich 580, 583 (1971), where the accident also occurred at night, is pertinent:

"In this case, there is no testimony that defendant-driver saw, could have seen, or could not have seen plaintiffs' car until he was 25 to 30 feet from it. There is no testimony whatsoever as to speed of plaintiffs' vehicle. It could have been traveling 90 miles per hour or 30. The trial court correctly pointed out, 'there are all kinds of possibilities, but there is nothing in the record.' "

In the instant case the defendant claims that negligence may be inferred from a supposed absence of skid marks from decedent's automobile. Assuming that there were no skid marks,[5] this

---

[5] The investigating officer indicated that he found no skid marks from decedent's automobile in the intersection itself, but did not check Ecorse Road, on which decedent had been traveling, for skid marks. Photographs taken the afternoon following the collision—after

cuts both ways. It suggests that decedent did not see the truck in time to take evasive action, but tells us nothing about whether decedent should have seen the truck.

There is no testimony concerning the speed of decedent's automobile; it would not be reasonable to infer from the absence of skid marks and the force of the impact alone that the decedent was exceeding the speed limit.[6] In a word, we conclude that there was insufficient evidence to support a finding that the decedent should have seen defendant's truck approaching the intersection in time to take evasive action.

While ordinarily the questions of negligence and contributory negligence are for the trier of fact to decide, the preliminary question of whether there is sufficient evidence from which jurors may reasonably infer negligence or contributory negligence is a question of law for the court.[7] The defendant has the burden of proving contributory negligence,[8] and in the instant case it failed to sustain its burden.

Reversed and remanded for a new trial. Costs to plaintiff.

All concurred.

the pavement had dried—do not reveal any skid marks on Ecorse Road near the intersection.

[6] Neither side's expert witness would offer an opinion concerning the speed of decedent's automobile at the time of the collision. According to Am Jur 2d Desk Book, Document 176, p 456, the *perception-reaction* distance at 35 miles per hour, the speed limit on Ecorse Road, is 78 feet. This involves a time span of 1-1/2 seconds. During the same period, defendant's truck, which was 52 feet in length, would have traveled 66 feet moving at a speed of 30 miles per hour. At 35 miles per hour this distance would be 78 feet.

The roadways were still wet; the *stopping* distance was, therefore, greater than it would be if the pavement was dry.

[7] See *Wyatt v Chosay,* 330 Mich 661, 671 (1951); *Berk v Blaha,* 384 Mich 580 (1971).

[8] See *Dearborn v Bacila,* 353 Mich 99 (1958); GCR 1963, 111.7.