ESTATE OF JAMES CONSTAS, Deceased, Petitioner-Appellee, *v.* WILLIAM CONSTAS, Respondent-Appellant.

First District (5th Division)    No. 62759

Opinion filed September 10, 1976.

Gaines, Boyer & Shepp, of Chicago (Eugene L. Shepp, of counsel), for appellant.

Conforti & Demos, of Chicago (James Demos, of counsel), for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Respondent appeals from a verdict and judgment awarding one-half of the funds contained in a safe-deposit box to the estate of his deceased brother.

Respondent and his brother were co-owners of a restaurant and were also joint lessees of three safe-deposit boxes located at various financial institutions in Chicago. The funds now in issue were in a box located at North Federal Savings and Loan Association. After the brother's death, the contents of the box were examined by an official of the Illinois Treasurer's office, and $22,986 was found. Shortly thereafter respondent removed these funds. Only $60 was found in the other two boxes.

Petitioner filed suit to recover one-half of the funds which were found at North Federal and also for portions of funds which were alleged to have been in the other boxes and which were claimed to be the decedent's property at the time of his death. After a jury trial, a verdict for petitioner was returned in the amount of $11,493 which represented one-half of the funds found at North Federal Savings.

Seven special interrogatories were submitted to the jury at respondent's request. The interrogatories asked:

"Does the Jury find from the evidence that at the time of the death of James Constas the said James Constas was the owner of the sum of $11,439.00 in a safe deposit box at North Federal Savings and Loan Association of Chicago to which both Bill Constas and James Constas had access?

Does the Jury find from the evidence that at the time of the death of James Constas there was the sum of $27,300.00 in a safe

deposit box at National Security Bank of Chicago to which both Bill Constas and James Constas had access?

Does the Jury find from the evidence that at the time of the death of James Constas there was the sum of $13,650.00 which was the property of James Constas in the National Security Bank safe deposit box?

Does the Jury find from the evidence that after the death of James Constas the respondent, Bill Constas, removed the sum of $27,240.00 from the safe deposit box?

Does the Jury find from the evidence that at the time of the death of James Constas there was the sum of $25,000.00 in a safe deposit box at First Federal Savings and Loan Association of Chicago to which both Bill Constas and James Constas had access?

Does the Jury find from the evidence that at the time of the death of James Constas there was the sum of $12,500.00 which was the property of James Constas in the First Federal Savings and Loan Association of Chicago safe deposit box?

Does the Jury find from the evidence that after the death of James Constas the respondent, Bill Constas, removed the sum of $25,000.00 from the safe deposit box?"

The jury answered "yes" in response to the first question and "no" to the last six, thus finding that decedent did own one-half of the funds at North Federal but did not have any funds in the other boxes at the time of his death. The answers to the seven interrogatories were therefore consistent with the general verdict.

Since a cross-appeal has not been filed, we direct our attention solely to the propriety of the verdict awarding one-half of the contents of the box at North Federal Savings to petitioner. Although respondent has raised several contentions on appeal, consideration of only one issue will be dispositive of this case.

During its charge to the jury the trial court instructed them concerning the manner in which they should answer the special interrogatories pertaining to the three safe-deposit boxes. After giving these instructions, the court stated:

"Now, *in consistence with your answers to these instructions*, if you find for the petitioner or the estate, you will then sign the verdict which states, we the jury find the issues for the petitioner and we assess the petitioner's damage in the sum of blank dollars, and you shall insert the amount and again bear the signature of each one of you.

If from the evidence that you have found that the petitioner or the estate has not sustained their position, then you will sign the other verdict *which will be consistent with the interrogatories* and

it states, we the jury find the respondent not guilty, and you will also sign this." (Emphasis supplied.)

Respondent urges that these comments indicated to the jury that the general verdict and special interrogatories were to be consistent with each other, and that it was error to instruct them in such a manner. We agree.

■■■ A special interrogatory controls over a general verdict. (Ill. Rev. Stat. 1973, ch. 110, par. 65; *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 226 N.E.2d 16.) The purpose of a special interrogatory was stated in *Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 267, 222 N.E.2d 468, 470:

> "It is generally recognized that the function of a special interrogatory is to require the jury's determination as to one or more specific issues of ultimate fact and is a check upon the deliberations of the jury. 'Special interrogatories are used for the purpose of testing the general verdict against the jury's conclusions as to the ultimate controlling facts.' *Wise v. Wise,* 22 Ill. App. 2d 54, 58."

Advising the jury that the special interrogatory and general verdict should conform constitutes reversible error requiring a new trial. *Thomas v. Dalpos* (1975), 26 Ill. App. 3d 877, 326 N.E.2d 42; *Sutton v. Peoples Gas Light & Coke Co.* (1970), 119 Ill. App. 2d 471, 256 N.E.2d 19; *Chase v. Morgan Cab Co.* (1971), 2 Ill. App. 3d 203, 276 N.E.2d 393.

In *Swanson v. Chester Johnson Electric Co.* (1955), 5 Ill. App. 2d 175, 177-78, 125 N.E.2d 304, 306, the trial judge instructed the jury that, "The verdict you reach should be compatible with the interrogatories." The appellate court reversed, finding that this instruction was erroneous:

> "The jury is free in its deliberations subject to the instructions which must correctly state the law. The trial court was in error in seeking to impose a restraint which is unwarranted. The legislature presupposed that a jury in the free exercise of its functions might return interrogatories inconsistent with the general verdict. It provided in that event that the interrogatory controls."

See also *Mathes v. Basso* (1968), 104 Ill. App. 2d 237, 244 N.E.2d 362.

■■ As in *Swanson,* the trial court in the instant case erroneously instructed the jury. After advising them concerning the interrogatory concerning each safe-deposit box, the court stated that the general verdict should be "in consistence with your answers to these instructions"[1] and "will be consistent with the interrogatories." We cannot accept petitioner's contention that this was merely a statement made in passing which was not so explicit as to be considered an instruction to the jury.

---

[1] During the conference on instructions and special interrogatories, respondent's attorney twice alluded to "instructions" when it is obvious he meant "interrogatories." This adds to our belief that the trial court was referring to the interrogatories.

The context in which the trial court made the statements could leave no doubt in the jury's mind that the verdict had to conform with the interrogatories.

Petitioner argues further that the jury could not have been influenced by the trial court's instruction since the case involved a simple issue. In *Swanson* the court answered this contention by stating:

> "It is true that the interrogatories in the instant case were not on complicated questions * * * and plaintiff argues that there was no showing of prejudice. * * * We cannot with confidence speculate what effect the trial judge's statement, in the instant case, had on the jury. It may have answered the interrogatories as it did to protect its decision to assess damages. It may have decided it had to assess damages because it answered the interrogatories as it did. We think the statement was prejudicial to a fair trial." (5 Ill. App. 2d 175, 179.)

Similarly, we will not speculate as to the effect that the trial court's statement had upon the jury.

■■■ Lastly, petitioner urges that reversal is not required since the interrogatories were erroneously submitted to the jury over his objection and therefore should be entirely disregarded. Section 65 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 65) requires a jury, upon the request of a party, to find specially upon any material question of fact stated to them in writing. The phrase "material question" has been held to mean "ultimate facts" upon which the rights of the parties depend. (*Packard v. Kennedy* (1955), 4 Ill. App. 2d 177, 124 N.E.2d 55; *Snow v. Farwick* (1970), 121 Ill. App. 2d 40, 257 N.E.2d 155.) A special interrogatory must be given if it is upon an ultimate question of fact and is in proper form. (*Phillips v. Shell Oil Co.* (1973), 13 Ill. App. 3d 512, 300 N.E.2d 771; *Golden v. Big Bear Foods, Inc.* (1968), 102 Ill. App. 2d 237, 243 N.E.2d 730.) Here the interrogatories concerned the question of ownership of funds in the safe-deposit boxes. Petitioner has not indicated why the interrogatories were improper, and we cannot conceive of a more material question in a case such as this. Therefore, the trial court was correct in submitting the interrogatories to the jury.

The judgment is reversed and the cause is remanded for a new trial to determine the ownership of the contents of the safety-deposit box at North Federal Savings and Loan Association.

Reversed and remanded.

BARRETT and SULLIVAN, JJ., concur.