MARK BABCOCK, a Minor, by The Northern Trust Company, his Guardian, Plaintiff-Appellee, *v.* THE CHESAPEAKE AND OHIO RAILWAY COMPANY, Defendant-Appellant.

First District (5th Division)   No. 78-1261

Opinion filed December 28, 1979.—Rehearing denied May 22, 1980.

James R. Gannon and Paul V. Esposito, both of Lewis, Overbeck & Furman, of Chicago, for appellant.

John G. Phillips, Ltd., and Sidney Z. Karasik, both of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

A jury found defendant guilty of negligence and awarded plaintiff, a seven-year nine-month-old boy, $925,000 for injuries sustained when defendant's train severed his feet. On appeal, defendant contends that it did not receive a fair trial because of numerous trial errors. We agree and consequently, we reverse and remand for a new trial.

Defendant has not presented us with any question concerning the factual basis for the jury's verdict, and we, therefore, will only state those facts necessary for an understanding of our discussion of the various assigned errors. The injuries involved in this lawsuit occurred on

December 17, 1969, in Grand Rapids, Michigan. Plaintiff's theory of the case was that he was negligently injured while exercising due care. Plaintiff, who was the only eyewitness to the incident, testified that at about 5:45 p.m. he arrived at the Watson Street crossing of the Chesapeake & Ohio Railway Company tracks. He was unable to cross the tracks because the train was stopped and blocked the crossing. While the train was stopped, plaintiff counted to himself for about 10 minutes and then walked into the middle of Watson Street to see if he could see any member of the train's crew. After about two minutes he returned to the sidewalk and waited another minute to see if the train would move. When it did not move, he walked about 70 feet south of the Watson Street crossing to see if there was any unobstructed place where he could cross the tracks; he could not find any such place. On his return to Watson Street, he saw a man crawl under the train to get to the other side of the tracks. Plaintiff then returned to the point 70 feet south of the crossing and there attempted to crawl under the train. While he was crawling under, the train moved without warning and severed his two feet.

Defendant's theory of the case was that plaintiff did not first attempt to cross the Watson Street crossing before crawling under the train and did not exercise due care at the time of the injuries. It presented testimony that its train had only been stopped for one minute prior to the time of the injuries. It also presented testimony that parts of plaintiff's feet and shoes were found at a point about 170 feet from the Watson Street crossing. It attempted to present testimony that the only footprints leading up to the location where the parts were discovered were small footprints which came from a spur track about 170 feet from the Watson Street crossing, but the trial court refused to allow the testimony.

OPINION

■ It is a fundamental principle of our system of justice that *every* defendant is entitled to a fair trial. Various safeguards have been built into our judicial system to assure a fair trial. However, a fair trial does not necessarily mean an error-free trial. Often, during the fast-moving and often heated exchanges which occur during the trial of a lawsuit, erroneous rulings and improper comments are made. Erroneous rulings and improper comments only result in a denial of a fair trial if they operate to the prejudice of defendant or unduly affect the outcome of the trial. (*Bruske v. Arnold* (1969), 44 Ill. 2d 132, 254 N.E.2d 453.) We hold that the cumulative effect of the errors discussed below so prejudiced defendant that it was denied a fair trial.

Initially, we find that the trial court ruled incorrectly when it refused to admit circumstantial evidence respecting the physical facts of the accident. As noted, defendant's theory was that plaintiff did not first

attempt to cross the railroad tracks at the crossing, but instead approached the tracks at a point approximately 170 feet south of the crossing and there crawled under the train. If this theory were established, defendant's duty to plaintiff would be only the duty owed to a trespasser, since under Michigan law one who crosses tracks not at an established crossing is a trespasser. (*Northern Assurance Co. v. New York Central R.R. Co.* (1935), 271 Mich. 569, 260 N.W. 763.) Also, it would suggest contributory negligence on plaintiff's part. On this theory, defendant attempted to present testimony by two witnesses who had investigated the snow-covered accident scene shortly after the accident. If permitted, they would have testified that the only footprints leading up to the location of the tracks where parts of plaintiff's feet and shoes were found were small footprints which had come down a spur track located approximately 170 feet from the crossing. The trial court allowed testimony that the parts were found approximately 170 feet from the crossing but disallowed testimony on the footprints and also rejected defendant's offers of proof on the subject. This ruling was improper.

■ Circumstantial evidence is competent evidence and may be used to contradict positive eyewitness testimony on a fact in a lawsuit. (See *Oudshoorn v. Warsaw Trucking Co.* (1976), 38 Ill. App. 3d 920, 349 N.E.2d 648.) In this matter, plaintiff testified directly that he first approached the Watson Street crossing and that only after a wait did he walk to a point 60 to 70 feet south of the crossing and there attempt to crawl under the train. Defendant's witnesses' testimony, if it had been admitted, would have contradicted plaintiff's testimony. The weight to be given such testimony would be, of course, decided by the trier of fact and we assume that such matters as the time lapse between the accident and the investigations, the failure to specifically identify the prints as those belonging to plaintiff, and matters of credibility will all go into the question of acceptance of the testimony. Nonetheless, we believe that the testimony of these witnesses was crucial to defendant's theory of the case and the court erred in not admitting the testimony.

We find that the trial court improperly limited defense counsel's questioning of plaintiff at trial. On cross-examination of plaintiff, defense counsel sought responses to the following questions:

(1) whether, prior to the accident, plaintiff had been warned of it being dangerous to crawl under a train or crossing;

(2) whether plaintiff knew of anyone else who had crawled under a train and had been injured; and

(3) whether plaintiff knew that the train could run over him and sever his leg.

The court sustained plaintiff's attorney's objection to each of these questions, stating in effect that the questions were beyond the scope of

direct examination. Defense counsel ended his cross-examination at this point but announced that he would save the questions until the time he called plaintiff under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 60). Later, the trial court refused defense counsel's request to call plaintiff as a section 60 witness, stating that the questions which defense counsel wished to ask had nothing to do with the evidence in the case. Defense counsel then requested permission to read from a statement signed by plaintiff to impeach his credibility. The court refused this request for a number of reasons, including that the statement was not written by plaintiff.

Although the scope of cross-examination is limited to matters brought out on direct examination, this rule should not be given an overly technical or narrow interpretation which thwarts the search for truth in a lawsuit. (*Marut v. Costello* (1966), 34 Ill. 2d 125, 214 N.E.2d 768.) The court's ruling in this case was an overly technical and narrow interpretation of the rule. One of the crucial questions in this case was whether plaintiff was contributorily negligent. On direct examination, plaintiff testified, in effect, that he had exercised due care before attempting to crawl under the train. Though he never testified to any prior warnings or prior knowledge of the dangers of crawling under a train, questions concerning these matters were proper on cross-examination because they contradicted his testimony to the effect that he exercised due care. Under Michigan law, in order to establish contributory negligence on the part of a minor, it must be shown that he fell below a standard of care which an ordinary child of similar age, experience, judgment and physical and mental development can be expected to observe under similar circumstances. (See *Armstrong v. City of Ann Arbor* (1975), 58 Mich. App. 359, 227 N.W.2d 343.) Defendant's proposed questions would have elicited responses relevant to the question of plaintiff's experience.

The court's denial of defendant's request to call plaintiff as a section 60 witness also was improper. Under section 60, a party may call an adverse party as a witness and examine him as if he were under cross-examination. (Ill. Rev. Stat. 1969, ch. 110, par. 60.) Use of this section is proper to bring out facts which a party might not otherwise have been able to bring out. (*People v. Davis* (1973), 11 Ill. App. 3d 775, 298 N.E.2d 350.) In light of the trial court's improper restriction of defense counsel's cross-examination of plaintiff, he ought to have been afforded an opportunity to call plaintiff as a section 60 witness in order to ask him the questions refused on cross-examination. Also, assuming defense counsel could first lay the proper foundation, he ought to have been afforded an opportunity to use the statement to impeach plaintiff's credibility. (See *Esderts v. Chicago, Rock Island & Pacific R.R. Co.* (1966), 76 Ill. App. 2d 210, 222 N.E.2d 117.) The statement contained impeaching material,

particularly on the subject of the amount of time the train blocked the crossing.

We find that the trial court improperly refused to give defendant's special interrrogatory on the issue of contributory negligence. The interrogatory asked the jury:

> "Before and at the time of the occurrence was the plaintiff, MARK BABCOCK, guilty of any contributory negligence which was a proximate cause of the occurrence?"

In refusing to give this interrrogatory, the trial court did not state its grounds.

■■ ■ A trial court must give a special interrrogatory if it involves an ultimate question of fact and if it is in proper form. (*Estate of Constas v. Constas* (1976), 42 Ill. App. 3d 223, 355 N.E.2d 683.) When in a negligence case the evidence raises a factual question as to plaintiff's own conduct and its causal relationship to the injury, a special interrogatory on the question of contributory negligence is proper. (*Wissmann v. Jedrzejak* (1979), 71 Ill. App. 3d 688, 389 N.E.2d 8.) A special interrogatory on the question of a minor's contributory negligence should contain a definition of the standard of care by which the minor is to be judged. (*Shaver v. Berrill* (1976), 45 Ill. App. 3d 906, 358 N.E.2d 290.) Yet, an interrogatory which does not contain such a definition may properly be given if this definition is provided in a jury instruction.

■ The evidence presented in this case was sufficient to raise a question of plaintiff's contributory negligence. Plaintiff's testimony that he attempted to crawl under the train after waiting upwards of 10 minutes was sufficient to raise the question. In a factually similar case, *Adams v. Grand Trunk Western R.R. Co.* (1930), 252 Mich. 326, 233 N.W. 331, plaintiff, a "bright, normal" 12 years and 3 months old boy, was found contributorily negligent when, after seeing a number of adults crossing between cars of a stopped freight train and after waiting upwards of five minutes, he was injured while attempting to cross between cars. Plaintiff attempts to distinguish the *Adams* case on the grounds that in *Adams* the plaintiff testified that he appreciated the risk that he was taking, and that he was 4½ years older than the plaintiff in the instant case. The fact that plaintiff in the instant case did not testify that he appreciated the risk he was taking is not legally significant. In *Lahnala v. Mineral Range Ry. Co.* (1916), 192 Mich. 460, 158 N.W. 838, plaintiff, who was a 10 years and 2 months old boy of "fair intelligence" was found contributorily negligent when he attempted to crawl under a train and he did not testify that he appreciated the risk he was taking. We find this case controlling on the question of whether plaintiff need testify that he was aware of the risk he was taking. Also, the fact that the *Adams* plaintiff was 4½ years older than the instant plaintiff is not of legal significance. In *Nagy v. Detroit, Toledo*

*& Ironton R.R. Co.* (1927), 241 Mich. 134, 216 N.W. 394, the plaintiff, who had a "mental" age of about eight years, was found contributorily negligent for conduct similar to the plaintiff in the present case. Although, in the *Nagy* case, the plaintiff did testify that he took a chance by attempting to cross the tracks between cars, that testimony was not necessary for the court's disposition.

In addition to plaintiff's testimony, defendant's circumstantial evidence, if properly admitted, raised a question on plaintiff's contributory negligence. Moreover, there is the possibility that if defendant had been properly allowed to ask plaintiff questions concerning his knowledge of the dangers of crawling under cars, he would have elicited responses indicating such knowledge. Nonetheless, even without the circumstantial evidence and answers to defendant's questions, the evidence sufficiently raised a question of fact on plaintiff's contributory negligence.

■■ Although the form of the special interrogatory did not contain a definition of the standard of care by which a minor was to be judged, we find that this deficiency was cured by reference to plaintiff's instruction No. 3 which defined ordinary care with reference to a minor and to the improperly refused defendant's instruction No. 15 which defined contributory negligence. Plaintiff's instruction No. 3 provided in pertinent part:

> "When I use the words ordinary care with respect to the plaintiff, I mean that degree of care which a reasonably careful minor of that age, mental capacity, and experience of plaintiff would use under circumstances similar to those shown by the evidence."

Defendant's instruction No. 15 provided:

> "It was the duty of the plaintiff before and at the time of the occurrence, to use ordinary care for his own safety. That means it was the duty of the plaintiff to be free from contributory negligence."

These instructions when read together with the special interrogatory gave a proper statement on the law of contributory negligence as it relates to a minor. Since contributory negligence was an ultimate issue of fact in this case, the denial of the interrogatory was error.

Plaintiff's reliance on *Shaver v. Berrill* (1976), 45 Ill. App. 3d 906, 358 N.E.2d 290, for the proposition that a special interrogatory must contain a definition of a minor's standard of care is misplaced because of the internal inconsistency of that opinion. The *Shaver* court indicated that the interrogatory given in that case was deficient because it required an adult standard of care instead of the standard of care for minors specified in IPI

Civil No. 10.05. Yet, IPI Civil No. 10.05 was, in fact, given as a separate instruction in that case and accordingly, should have cured any deficiency in the interrogatory. (See *Bruske v. Arnold.*) In light of this inconsistency, the decision in *Shaver* is not controlling.

■■ We find that the trial court improperly refused to give three of defendant's tendered IPI jury instructions. The trial court's failure to give defendant's instruction on circumstantial evidence (Illinois Pattern Jury Instructions, Civil, No. 1.03(2d ed. 1971)(hereinafter IPI Civil) was error. A defendant has a right to have the jury instructed on its theory of the case if that theory is supported by the evidence. (*Illinois State Trust Co. v. Walker Manufacturing Co.* (1979), 73 Ill. App. 3d 585, 392 N.E.2d 70.) Defendant's theory was that plaintiff attempted to cross the tracks at a point approximately 170 feet south of the Watson crossing. The evidence arguably supports this theory since parts of plaintiff's feet and shoes were found in that vicinity. Also, defendant's evidence of the footprints, if it had been properly admitted, would have supported this theory.

The trial court erred in refusing defendant's instruction on contributory negligence (IPI Civil No. 10.03). Since, as we have already found, the question of contributory negligence was an ultimate question of fact in this case, defendant's instruction should have been given. Plaintiff's argument that the instruction was properly refused because it would be confusing and misleading without a definition of the standard of care applicable to a minor is without merit. Plaintiff's instruction No. 3 cures any deficiency in defendant's instruction and properly informs the jury of the law to be applied to a minor. See *Varacalli v. Russell* (1978), 67 Ill. App. 3d 988, 385 N.E.2d 753.

■■ The trial court erred in refusing to give defendant's instruction on the burden of proof (IPI Civil No. 21.02). As a result of the court's failure to give this instruction, the jury was not given any instruction on burden of proof. An instruction on burden of proof was necessary, particularly because contributory negligence was an issue in this case. Defendant's instruction properly informed the jury that the plaintiff had the burden of proving that he was exercising ordinary care for his own safety at the time of the accident. (*Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 302 N.E.2d 257.) Without such an instruction, the jury may have erroneously thought that defendant had the burden of proof on contributory negligence.

■■ Plaintiff argues that since contributory negligence is an affirmative defense under Michigan law (*Erdei v. Beverage Distribution Co.* (1972), 42 Mich. App. 377, 202 N.W.2d 434), defendant does, in fact, have the burden of proof on the issue. However, under traditional conflict of law rules, burden of proof is a procedural matter which is governed by the law of the forum State (*People v. Saiken* (1971), 49 Ill. 2d 504, 275 N.E.2d

381) "unless the primary purpose of the relevant rule of the state of the otherwise applicable law is to affect decision of the issue rather than to regulate the conduct of the trial." (Restatement (Second) of Conflicts of Law §133 (1971).) Under Michigan law, burden of proof on contributory negligence is a procedural law designed to regulate conduct of the trial. (See *City of Dearborn v. Bacila* (1958), 353 Mich. 99, 108, 90 N.W.2d 863, 869 (Black, J., concurring).) Thus, since this is a procedural matter governed by Illinois law, defendant's instruction that plaintiff had the burden of proof on contributory negligence was an accurate statement of the law applicable to this case.

We find that the trial court improperly admitted a Michigan statute into evidence but ruled properly in admitting a Grand Rapids ordinance into evidence. The Michigan statute, Mich. Stat. Ann. §22.281(1) (Callaghan 1970), was entitled "Obstruction of Vehicular Traffic" and provided:

"It shall be unlawful for a railroad company to permit any of its trains to obstruct any vehicular traffic on public streets or highways for a longer period than 5 minutes at any one time."

The Grand Rapids ordinance, Grand Rapids, Mich., Code, ch. 182, §10.182, was entitled "Obstructing Streets" and provided:

"No officer, agent, or employee of any railroad company operating a railroad in said city, in charge of any engine, car or train of cars, shall suffer or permit any engine, car or train of cars to stand upon or across Bridge Street, Shawmut Street, East and West Fulton Streets, Market Street, Grandville Avenue, Wealthy Street and Hall Street, First Street, Second Street, Third Street, West Leonard Street, Taylor Avenue, Plainfield Avenue, Coldbrook Street, Franklin Street and South Division Avenue, in said city at the intersections thereof with such railroad more than 2 minutes at any time between the hours of 6:30 to 7:30 a.m., 11:30 a.m. to 1:00 p.m, 5:30 to 6:30 p.m., nor upon any other crossing, and during the rest of the day for more than 5 minutes at any one time. No car in process of switching shall be left standing nearer than 20 feet to any cross-walk. No car or cars shall be shunted over any crossing unless an employee of said railroad shall be stationed on said crossing. All cars placed at warehouses or on sidings shall have brakes set or be securely blocked."

Plaintiffs alleged and offered testimony to prove that defendant violated these two laws. The trial court admitted the laws as evidence of defendant's negligence in this case and so instructed the jury.

Under the applicable Michigan law, a defendant's violation of a statute or ordinance creates a rebuttable presumption of negligence if (1) plaintiff is a member of the class of persons sought to be protected by the

statute or ordinance; (2) the harm caused is the type of harm sought to be protected against by the statute or ordinance; and (3) violation of the statute or ordinance is, in fact, a proximate cause of the harm. (*Zeni v. Anderson* (1976), 397 Mich. 117, 243 N.W.2d 270.) The presumption of negligence may be rebutted by evidence of a legally sufficient excuse. (*Massey v. Scripter* (1977), 401 Mich. 385, 258 N.W.2d 44.) Defendant argues that plaintiff is not a member of the class of persons sought to be protected by either the statute or ordinance or, alternatively, that any violation of either law did not proximately cause plaintiff's injury.

We find that the trial court erred in admitting the Michigan statute into evidence because the clear and unambiguous terms of the statute indicate that plaintiff is not a member of the class sought to be protected by the statute. The Michigan statute expressly states its applicability to vehicular traffic. Since plaintiff was not travelling in a vehicle at the time of the accident, the statute does not apply to him. We may not construe or interpret a statute in a manner contrary to its clear intent. *Davis v. Green Oak Township* (1975), 65 Mich. App. 188, 127 N.W.2d 241.

The court did not err, however, in admitting the Grand Rapids ordinance into evidence. The ordinance did apply to pedestrians, and violation of its provision could be considered the proximate cause of plaintiff's harm. The ordinance is not as clearly stated as the Michigan statute and requires judicial construction. A fundamental rule of statutory construction is that the construction must be made in light of the purpose of the legislature in enacting the statute, with the legislative intent taken or presumed in accordance with reason and good discretion. (*People v. Lambert* (1975), 395 Mich. 296, 235 N.W.2d 338.) An analysis of this ordinance in accordance with reason and good discretion indicates its applicability to pedestrians. Although the ordinance does not expressly state its applicability to pedestrians, its language indicates that it applies to more than just vehicular traffic and the roadways which they travel upon. The ordinance, though entitled "Obstructing Streets," expressly forbids the blocking of "crossings." The word "crossing" has a broader meaning than just the roadways which cross over tracks. A crossing includes that portion of the tracks on a line with the sidewalks which border the roadway. To rule otherwise would be to ignore the reality of foot traffic across railroad tracks. We cannot believe, in accordance with reason and good sense, that that is what the Grand Rapids City Council intended, and there are no express words in the ordinance which would indicate that this was their intent.

The question of whether the violation of this ordinance was a proximate cause of plaintiff's injury was properly a question of fact for the jury. (See generally *Bensinger v. Happyland Shows, Inc.* (1973), 44 Mich. App. 696, 205 N.W.2d 919.) Plaintiff's evidence indicated that he only

attempted to crawl under the train to get to the other side of the tracks after waiting at the crossing for a period of time longer than the five minutes prescribed by the ordinance. Defendant's evidence indicated that the delay was for only one minute. This conflict in evidence in and of itself created a disputed question for the jury. Additionally, defendant's circumstantial evidence indicated that plaintiff never did in fact wait at the crossing but instead attempted to cross at a point south of the crossing. If this evidence had been properly admitted and believed by the jury, violation of the ordinance would have been inapplicable to this case and thus could not have been the proximate cause of plaintiff's injuries.

We find only limited merit to defendant's claim that the court committed prejudicial error in its rulings on the admissibility of defendant's operating rules. During plaintiff's section 60 examination of defendant's trainmaster, plaintiff introduced certain portions of some of defendant's operating rules which pertained to safety in the operation of defendant's trains. These portions of the rules were admitted into evidence over defendant's objection. Later, defendant attempted to introduce the entire rules into evidence, and to offer testimony concerning an interpretation of certain terms in the rules, but the court refused on grounds that only those portions of the rules admitted into evidence were applicable and there was no need for an interpretation of any terms.

The court did not commit any error in admitting portions of defendant's operating rules as evidence of its negligence. Under Michigan law, which is applicable here because this is an evidentiary ruling involving substantive matter, the standards of an industry are relevant evidence to be used in determining the standard of care by which the negligent or nonnegligent character of a defendant's conduct is to be determined. (*Marietta v. Cliffs Ridge, Inc.* (1971), 385 Mich. 364, 189 N.W.2d 208.) Defendant's rules constitute its guidelines for the operation of its trains, and we can find no legal distinction between these company rules and industry-wide standards. *Dixon v. Grand Trunk Western Ry. Co.* (1908), 155 Mich. 169, 118 N.W. 946, cited by defendant in behalf of its position that the rules were inadmissible, is distinguishable on grounds that the case did not involve the question of whether company rules can be used as some evidence of defendant's standard of care.

The court did commit error, however, insofar as it refused defendant's request to introduce into evidence one of the rules in its entirety. Plaintiff introduced a sentence from one of defendant's rules which stated:

> "When trains are standing for a sufficient length of time, ground inspection must be made by train men from both sides of the train."

This sentence, when read in the context of this case, could have given the

jury the impression that the trainmen had a responsibility to inspect the tracks to make sure that no person had crawled under the train. The remainder of the rule makes it clear, however, that the rule only requires an inspection for the purpose of discovering defects in the track or train. In order to avoid any misunderstanding, the court should have allowed defendant to introduce the remainder of the rule into evidence. The court's ruling with respect to all of the other rules and with respect to the offer of testimony to interpret the rules were, however, proper.

■■ We find that the trial court erred when it refused to certify as part of the record on appeal certain exhibits which were marked and identified at trial but never offered into evidence. The exhibits, which included depositions, police reports, and memoranda, should have been certified as part of the record on appeal because they were referred to in the trial proceedings and were necessary "to aid this court in a better understanding of the trial proceedings." *In re Sharp* (1978), 65 Ill. App. 3d 945, 951, 382 N.E.2d 1279, 1284.

■■ Lastly, we find that various statements made by plaintiff's attorney during closing argument were improper and they were not waived by defendant's failure to object to them. In commenting upon the fact that the railroad was a corporation which acted through its employees, plaintiff's attorney stated:

> "That is equally true of lawyers who represent a railroad because everybody who is acting on behalf of and is employed by the railroad is the railroad. *I would not like to have anyone say, well, since I am a lawyer if I may have done something that you might criticize please blame me, don't blame my client. That just doesn't ring true.*" (Emphasis added.)

This comment was improper because it erroneously suggested to the jury that the conduct of defendant's attorney could be considered in determining defendant's guilt. (*Paulsen v. McAvoy Brewing Co.* (1920), 220 Ill. App. 273.) Other comments by plaintiff's attorney were improper because they attempted to evoke a bias toward corporations. For example, he stated that this case:

> "* * * involves a seven-year old child pitted against the entire railroad, against all of their personnel, against all of their claim department people, against all of their train crew, and against anyone and everyone who stands behind the entire railroad."

Such emphasis of the corporate nature of defendant was improper because it would tend to inflame any prejudices which the jury might have against corporations (*Wellner v. New York Life Insurance Co.* (1947), 331 Ill. App. 360, 73 N.E.2d 156) and detract from the real issues in the lawsuit. Also improper were plaintiff's attorney's comments regarding a claim agent's fabricated testimony. He stated, in effect, that the claim

agent had fabricated a story that defendant's train had only been stopped for one minute before the accident. Such comments were improper because they found no support in the evidence. Even though an attorney should not be unduly restricted in his closing argument, he may not misrepresent the evidence or argue facts not in evidence. (*Schwedler v. Galvan* (1977), 46 Ill. App. 3d 630, 360 N.E.2d 1324.) Defendant's failure to object to any of these comments does not constitute a waiver in this case due to the other errors committed by the trial court.

We have considered other errors claimed by defendant, but we see no need to discuss them because they are either totally without merit or are not likely to reoccur upon retrial.

Reversed and remanded.

LORENZ and MEJDA, JJ., concur.