Maxine Schnepf, Administratrix of the Estate of James L. Schnepf, Deceased, Plaintiff-Counterdefendant-Appellant, v. Burl Grubb and the City of Barry, Defendants-Appellees, and Burl Grubb, Counterplaintiff.

Gen. No. 11,104.

Fourth District.

July 30, 1970.

Lewis, Blickhan & Garrison, of Quincy (George B. Lewis and Edward B. Tucker, of counsel), for appellant.

Schimmel & Schimmel, of Pittsfield, for appellee.

■■■■■■■■■

TRAPP, J.

Plaintiff appeals from judgments for the defendants entered following the verdict of a jury in an action for wrongful death. Post-trial motions were denied and plaintiff appeals. The jury found in favor of plaintiff and counterdefendant upon Grubb's countercomplaint for personal injuries. No appeal is taken from the judgment on such verdict.

It is conceded that Grubb (hereinafter called the defendant) shot the decedent, James Schnepf, and the issue before the jury was whether the shooting was in self-defense. The action against the City of Barry is upon the theory that Grubb, mayor and acting chief of police of the City, was an agent of the City acting within the scope of his employment at the time of the shooting.

Upon appeal plaintiff urges that the court erred in refusing to direct a verdict for plaintiff, that the verdict is contrary to the manifest weight of the evidence, that the court erred in refusing to admit into evidence a photograph of the decedent taken after his death, and that the court erred in permitting a physician to testify that defendant suffered a broken nose. No issue is raised on instructions.

Decedent was aged 19 years and is described as being six feet tall, weighing 175 pounds, and physically strong. He was usually employed in farming and manual labor. Defendant is described as being 76 years of age and in poor physical health.

Plaintiff contends that defendant had made threats to kill decedent and that the killing was in revenge.

■■ ■■ The jury was instructed that defendant, by virtue of his office, was a conservator of the peace, in substantially the language of chapter 38, § 7–5, Ill Rev Stats 1965. The relevant language of the instruction is:

". . . a peace officer is justified in using force likely to cause death or great bodily harm only when he believes that such force is necessary to prevent death or great bodily harm to himself."

In terms of self-defense he is held to the same standard as a private person. Chapter 38, § 7–1, Ill Rev Stats 1965. Whether danger of great bodily harm is actual or apparent does not depend upon an assailant's use of a deadly weapon or actually having one in his possession. People v. Brumbeloe, 97 Ill App2d 370, 240 NE2d 150; The People v. Motuzas, 352 Ill 340, 185 NE 614, and The People v. Turner, 385 Ill 344, 52 NE2d 712.

A prelude to this tragedy occurred on the evening of October 30, 1966, which plaintiff urges is relevant upon the ultimate issue. In the late afternoon or early evening of this date, defendant stopped a car driven by decedent who was then accompanied by his brother, Joseph, aged 22, and witnesses, Sparrow and Franklin, each aged 18 years. Defendant charged that decedent had ignored a stop sign, which he denied. Defendant testified that decedent and his brother got out of the car and that they pushed and shoved him, that he went to his car to get a "billy," that the brother, Joseph, jerked the "billy" away and decedent hit him in the face. Eyewitnesses at a nearby filling station testified to seeing the decedent and his brother fighting with defendant, but did not see the "billy." Decedent's companions testified that defendant got the "billy" and hit decedent on the shoulder, that the "billy" was taken away and that decedent pushed or shoved defendant into a fence some six feet distant, and that defendant's injuries were thus incurred. Later that evening, decedent and his brother were brought to the City Hall where they were arrested by the sheriff and the deputy. The evidence is that decedent started to run and that the sheriff's

men had to fight him to the ground to place handcuffs on him. During the melee, defendant was hit or kicked in the face. There is testimony that decedent insisted that defendant also be arrested at that time for hitting him with the "billy." Some weeks later the brother, Joseph, pleaded guilty to kicking the deputy sheriff in the face.

There is conflicting testimony as to whether the defendant was striking or attempting to strike decedent with a cane while the sheriff and deputy were struggling to put handcuffs on decedent. Plaintiff's witnesses, Garner, aged 18, and Hodgson, aged 17, testified that at the time of the arrest of decedent, they heard defendant say that decedent had given him an awful beating and that he would carry a gun in his car and shoot him.

At about 1:30 a. m. on November 6, 1966, Dale Smith, a State policeman then residing in Barry, was awakened by a car with noisy occupants. He recognized one voice as that of the decedent. Smith testified as to personal harassment—both his police cruiser and his personal car had been splashed with paint, refuse thrown in his yard and obscenities shouted at his family. Shortly thereafter he heard several shots fired. He went to his police car, waited until he saw the other car and followed it. He called by radio to the police communication center to ask for another trooper and requested the center to call the Barry police. Dale Christianson, the Barry nightwatchman, was called and subsequently was requested by Smith to pick up the defendant at his home.

Defendant and Christianson ultimately followed the car which was driven by Owen Brown accompanied by decedent and Dennis Franklin to a point where it was stopped by Smith, whose car blocked the road. Smith approached the Brown car with drawn revolver and took Brown to the patrol car. Defendant remained at the

rear of the Brown car, some 25 feet distant, holding a shotgun. Christianson stood to the left rear of the squad car. Smith testified that upon previous arrests decedent gave trouble, would resist arrest and would fight officers.

After Brown was given a ticket, decedent took over driving the Brown car. Smith drove away, followed by Christianson and the defendant. A block distant they discovered that decedent was following without headlights. Christianson stopped and decedent stopped behind the Barry police car—the testimony varies from a few feet to 30 feet distant. Christianson walked back to the Brown car and the defendant stood by the right front door of the city car. Decedent and his companions got out of the car to talk with Christianson. Without more, decedent started to move away from the others toward the defendant. Smith, who had stopped around the corner, couldn't say whether decedent was walking rapidly or running toward the defendant. Christianson did not see this. When decedent was about six feet from defendant, the latter shot him with a revolver. Decedent was hit in the chest and died a few minutes later.

Defendant testified that he saw decedent approaching and told him to stop three times—the first when he was about 15 feet distant, and that he told decedent to stop when 5 or 6 feet distant and then fired. Christianson did not observe or hear anything until the shooting. Franklin and Brown testified that nothing was said. There is no evidence that decedent was armed. Defendant agrees that he did not call to Christianson or Smith for help.

A substantial number of witnesses testified that decedent's reputation in the community for peacefulness and quiet was bad. Others testified that he was hardworking, but upon cross-examination it appears that he had assaulted one or more persons.

■ Plaintiff cites Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504, in urging that the court erred in refusing to direct a verdict for plaintiff. It was there stated that a court should direct a verdict only in those cases in which all of the evidence, viewed in the aspects most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand. The testimony considered by the court in stating such rule was nonspecific and at best, equivocal. In this case there is a substantial factual dispute, and the jury's assessment of the credibility of the several witnesses must be considered a significant and controlling factor.

Plaintiff urges that defendant was not struck or wounded in any manner, and that assistance from Christianson or Smith was but a short distance away, and he contends that defendant could not reasonably believe that it was necessary to shoot decedent to prevent serious bodily injury.

■ Applying the rule of Pedrick, the evidence most favorable to the defendant includes the pronounced differences in age and physical strength of the parties, the fact that decedent for no stated or apparent reason left the presence of his companions and Christianson to proceed rapidly toward the defendant, that he ignored the three separate warnings to stop and continued his approach until almost an arm's length distance from the defendant. There is evidence that upon two recent occasions decedent had used great force against defendant. The presence of Christianson and Smith some 20 feet or more distant could not prevent several quick, severe blows or kicks which might cause great bodily harm to an elderly man. All of the circumstances preceding the shooting and present at that time must be distilled to determine the reasonableness of defendant's belief that he must use major force to prevent great bodily injury to himself. Such distillation process

438

proceeds through the determination of the credibility of witnesses whose descriptions of events are completely contradictory in essentials. The jury and not the court is the instrument of such process.

■ It is further argued that the verdict is contrary to the manifest weight of the evidence, and plaintiff makes essentially the same arguments as those discussed. The manifest weight of the evidence has been defined as that which is clearly evident, plain and indisputable. It is the rule that upon a disputed factual question, it is for the jury to determine the weight of the evidence, after considering the credibility of the several witnesses, and a reviewing court will not reverse such verdict unless a conclusion opposite to that of the jury is clearly evident and plain. Rose v. B. L. Cartage Co., 110 Ill App2d 260, 249 NE2d 199; Schneiderman v. Interstate Transit Lines, Inc., 331 Ill App 143, 72 NE 2d 705. Again, this Court must consider the fact that the trial court heard the testimony of the witnesses and denied the post-trial motion. Bergman v. Hedges, 111 Ill App2d 35, 249 NE2d 666. Upon the principles discussed and this record, this Court cannot say that the verdict is contrary to the manifest weight of the evidence.

■ Plaintiff urges that the trial court erred in permitting a physician to testify that defendant received a broken nose on October 30, 1966. He testified that it was difficult to make a sure diagnosis of a broken nose without the benefit of an X ray. Plaintiff contends that the physician was not qualified as an expert to read the X ray. Such was taken at the physician's request to assist in treatment, and he testified that he saw the fracture as pointed out by a qualified radiologist. Essentially, however, the issue is moot, as the testimony is only relevant to defendant's counterclaim, and there is no appeal from the verdict on such counterclaim.

 It is urged that the trial court erred in refusing to admit into evidence on rebuttal, a certain photograph taken of decedent after death which is said to show a black and blue mark upon his shoulder. It is said that such photograph impeaches the testimony that defendant did not strike decedent with the "billy" on October 30th, and corroborates the testimony of the brother, Joseph Schnepf, that he saw a mark on decedent's shoulder before the latter was wrestled to the ground by the sheriffs. From the abstract it appears that the photograph was not initially qualified for admission into evidence, and was not thereafter qualified on rebuttal. In argument before the trial court, counsel agreed that the witnesses testified to seeing a red mark. The trial court concluded that the photograph did not clearly show what it was said to show. We have examined the photograph which was of decedent's back, and neither the shoulder nor the alleged bruise is clearly or completely shown. It would require conjecture to determine the nature and extent of the mark alleged to be a bruise. Plaintiff cited The People v. Kolep, 29 Ill2d 116, 193 NE2d 753 and Hedrich v. Borden Co., 100 Ill App2d 237, 241 NE2d 546. In those cases it was held that there was no abuse of discretion in admitting photographs into evidence which were accurate, material and relevant. This record does not show an abuse of discretion in refusing to admit the exhibit.

The judgment is affirmed.

Affirmed.

SMITH, P. J. and CLARK, J., concur.