WALTER TINNER, Plaintiff-Appellant, *v.* POLICE BOARD OF THE CITY OF
CHICAGO *et al.,* Defendants-Appellees.

First District (3rd Division)   No. 76-1586

Opinion filed June 28, 1978.

Burke & Burke, Ltd., and L. D. McCurrie, both of Chicago (John M. Burke, of counsel), for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Robert L. Thompson, Assistant Corporation Counsel, of counsel), for appellees.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

By this appeal, the plaintiff, patrolman Walter Tinner, seeks a review of the decision of the Police Board of the City of Chicago (the Board) that ordered his discharge from the police force. The appeal presents two issues: (1) whether the Board's findings that Tinner violated Police Department Rules are against the manifest weight of the evidence; and (2) whether there is a basis in the record for the Board's decision that there was "cause" to discharge him.

The charges against Tinner arise out of an incident which occurred in a bar in Chicago on December 20, 1973. At an administrative hearing investigating the matter for the Board six witnesses testified for the Police Department. Marcus Chambliss stated that he was in the bar with two friends, Barbara Easterling and Arnold Bibbs. A woman he thought he knew entered with Tinner. She and Chambliss spoke to each other. According to Chambliss, Tinner then asked him whether he "knew" or "wanted" the woman. Bibbs and another man, Forrest Roundtree, intervened; words were exchanged and Chambliss said he went back to his seat. Tinner left the premises, returned, and a few minutes later, in a loud voice, again questioned Chambliss about the woman. Chambliss told Tinner that he did not know or want the woman and asked Tinner why he was so angry. Chambliss described Tinner as having "a drink, too much," and said that "his gun was out." However, he testified that Tinner

neither drew this gun nor "put the gun on" him. He stated that he doubted the gun was out for a minute before Tinner put it back. He could not remember if the gun had fallen to the floor or if Tinner had stooped to pick it up. The police arrived and, according to Chambliss, Tinner refused to give them the gun. Chambliss reported that Tinner said he would only give his gun to a sergeant.

Chambliss' companions, Bibbs and Easterling, also testified. Bibbs said he was at the bar the night of the disagreement between Tinner and Chambliss and he gave a short description of the events. He said he could not remember much about the evening. His testimony did not mention Tinner's gun. In Easterling's version of the occurrence, Tinner approached Chambliss several times. One of these times, Easterling said, Tinner "pulled out the gun" but he did not "hold it" because it fell to the floor. She said Tinner picked the gun up and, she "guessed" he put it back under his coat. When questioned again about Tinner's conduct with the gun, she became uncertain. The police arrived, Easterling said, and there was a great deal of confusion. She could not remember what happened after that.

Forrest Roundtree testified that he saw Tinner get involved in an argument at the bar. He said that during the disagreement he saw and heard a gun fall to the floor and that Tinner immediately retrieved it and returned it to his pocket. The police arrived and Tinner and one of the officers began a discussion. Roundtree said they apparently knew each other from a prior confrontation. He heard Tinner tell the officer that the gun had fallen to the floor.

Two police officers testified about the incident. Sergeant William Burns said that when he arrived at the bar he found Officers Anczer and Shier already there. They told Burns that since they summoned their superior, Sergeant Proff, they did not need his assistance. Burns said that Shier, trying to arrest Tinner, asked Tinner to surrender his weapon. Tinner kept backing away from Shier. Burns stated that Tinner finally surrendered the gun to Proff. Officer Donald Peterson testified that he went to the bar with Burns. He said he heard Tinner make reference to several officers in a racially derogatory manner, and repeated the explicit words Tinner used for the record. The Police Department did not call Shier, Anczer or Proff to testify.

Tinner gave his account of the incident at the hearing. He testified that when he entered the bar that night with a woman, he did not know Chambliss, Bibbs or Easterling. He overheard Chambliss make a vulgar remark to his companion. He argued with Chambliss and continuing the argument, he went to the table where Chambliss was sitting with Easterling and Bibbs. According to Tinner, as he leaned over the table

between Easterling and Chambliss, his gun fell from the waistband of his tight-fitting pants. He said he picked up the gun and returned it to his belt, but that the bartender called the police. Tinner said that among the police who responded to the call were Shier and Anczer. He contended he had a confrontation with Shier some five or six months earlier and that because of it Shier had threatened to "get" his job and filed a complaint against him. On this occasion, according to Tinner, Shier entered the bar saying, "Oh, you again. I got your job this time, haven't I." Tinner explained to Shier what had occurred, but Shier tried to grab him and place him under arrest. Tinner asked Shier why he was being arrested and refused to surrender his gun; he said he would only give it to a sergeant. Tinner admitted he and Shier were using profanities toward each other, but he denied using profanity toward any other officer. Tinner also denied drawing his gun or threatening anyone with it. Tinner said that he had been a Chicago police officer for 13 years, and that he had received 176 special departmental commendations. Documentary evidence of this and photographs depicting the type of clothing worn by Tinner on the night of the incident were admitted.

Chicago Police Captain Stokes and Chicago Police Sergeant Petrocelli testified as character witnesses on behalf of Tinner. Each had been Tinner's superior. They stated that he was a very good, hard-working and dedicated police officer, with a good reputation in the department for truth.

Based on this evidence, the Board ordered Tinner's discharge from the force. It found that he violated Police Department Rule 8, which prohibits an officer's maltreatment of or disrespect to any person when, "without legal justification," he used insulting and abusive language toward Chambliss, grabbed and shoved him and threatened him with a gun. An additional violation of Rule 8 occurred, according to the Board, when Tinner used abusive and insulting language toward Anczer and Shier. The Board also found that Tinner violated Rule 38, which prohibits the unlawful or unnecessary use or display of a weapon, when he, "without legal justification," displayed his firearm. Tinner petitioned the circuit court of Cook County to review the order pursuant to the Administrative Review Act. (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*) In his petition, he argued that the record did not support the findings that he violated the departmental rules. He alleged that the Board decided to dismiss him only after privately considering his employment disciplinary history. He asserted that he was not told of its use at the time and that it was never made part of the record. The Board did not deny this allegation. The court affirmed the Board's findings, upheld the discharge, and ruled that after such findings the Board can consider matters outside of the record to

determine the appropriate penalty to impose. An earlier Board order and a circuit court decision relating to it have not been questioned and, therefore, are not pertinent to this appeal.

■■■ The first issue is whether the Board's findings are against the manifest weight of the evidence. In reviewing an administrative decision under the Act, a court is limited to this standard and may not reweigh the evidence to overturn a result because the opposite conclusion might be reasonable. (*DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 202 N.E.2d 522.) The findings and conclusions of the Board on questions of fact must be considered *prima facie* true and correct. (Ill. Rev. Stat. 1975, ch. 110, par. 274.) Rejection of a finding is possible only if the reviewing court can say that "all reasonable and unbiased persons, acting within the limits prescribed by law and drawing all inferences in support of the finding would agree * * * [it] is erroneous." (*Daniels v. Police Board* (1976), 37 Ill. App. 3d 1018, 1023, 349 N.E.2d 504, 508.) If the issue is merely one of conflicting testimony and credibility of a witness, the Board's determination should be sustained. (*Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 557, 370 N.E.2d 1198, 1207.) If, however, the record does not disclose evidence supporting that determination, a reviewing court must not hesitate to grant relief. *Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 359, 307 N.E.2d 371, 375.

Support for the Board's finding that Tinner improperly displayed his gun in violation of Rule 38 is negligible. Five witnesses, present when the alleged conduct took place, testified at the hearing. None of them said Tinner drew or pointed his gun at anyone or threatened anyone with it. Bibbs could not recall the incident; Roundtree merely stated that he saw the gun fall. Both Tinner and Chambliss denied that the gun was either drawn or held on anyone. Only from Easterling's statement that Tinner "pulled the gun out" is there an inference that he intentionally exhibited his gun in an attempted show of force. This inference is based solely upon Easterling's use of the word "pull" and it alone buttresses the Board's findings that Tinner consciously "displayed" his firearm without justification. No other evidence suggests this conduct.

■■■ The word "pull" is not a synonym for the word "display." As it is used in Rule 38 "display" connotes an exhibition, an advertisement, an intentional flaunting of the weapon. (See J. I. Rodale, The Synonym Finder 299 (8th ed. 1977).) In the context of Easterling's testimony, that Tinner did not hold the gun on anyone but that it fell to the floor and that he immediately retrieved it and put it away, the interpretation of the word "pull" to mean "display" is untenable. This is not a case where the trier of fact must make its resolution by an assessment of the credibility of witnesses in light of conflicting testimony; none of the testimony in the

record actually conflicts on this point. Rather, in this case, the Board has relied on an inference so lacking in substance that it cannot support its findings. (See *Caliendo v. Goodrich* (1975), 34 Ill. App. 3d 1072, 1076, 340 N.E.2d 560, 563.) We, therefore, must conclude that the finding that Tinner improperly displayed his gun in violation of Rule 38 is erroneous and contrary to the manifest weight of the evidence.

Similarly, the Board's determination that Tinner violated Rule 8 by using insulting language toward Chambliss and Anczer and by physically abusing Chambliss and threatening him with a gun must also fail. There is no evidence in the record to support these findings.

■■ However, the record does disclose evidence supporting the Board's findings that Tinner used abusive and insulting language toward Shier in violation of Rule 8. Peterson testified to a specific racial epithet Tinner made and Tinner himself admitted that he exchanged profanities with Shier. Such disrespect to a uniformed officer by an off-duty officer in the presence of the public may be considered a concern of the police department (*cf. Rogenski v. Board of Fire & Police Commissioners* (1972), 6 Ill. App. 3d 604, 285 N.E.2d 230), and can constitute disrespect to a person in violation of Rule 8.

The next question is whether there is a basis in the record for the Board's finding of "cause" to discharge Tinner from the force. (*Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 370 N.E.2d 511.) The Board's power to discharge is derived from the statutory standard of "cause." (Ill. Rev. Stat. 1975, ch. 24, par. 10—1—18.1.) This has been defined as a "substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for * * * [the officer] no longer holding the position." *Kreiser*, 69 Ill. 2d 27, 30, 370 N.E.2d 511, 513.

■■ The Board's dismissal order was based on a finding that Tinner violated Rules 8 and 38. Improper use of a weapon by a police officer in violation of Rule 38 and physical and verbal abuse of civilians in violation of Rule 8 are very substantial charges that directly relate to service disciplinary requirements. (See, *e.g., Oratowski v. Civil Service Com.* (1954), 3 Ill. App. 2d 551, 123 N.E.2d 146.) The reversal of these findings leaves Tinner's violation of Rule 8, through his conduct in swearing at Shier, the sole charge for which the Board can penalize Tinner. We cannot say that swearing at Shier, however unseemly, is the type of conduct so related to the requirements of the service that it constitutes statutory cause for dismissal. The fact that Tinner was off duty at the time alone mitigates against its sufficiency. Since this violation of Rule 8 is not cause for Tinner's discharge, the case must be remanded to the Board for

consideration of what action, if any, should be taken against him for the infraction. *Kreiser*, 69 Ill. 2d 27, 30-31, 370 N.E.2d 511, 513.

From the pleadings, it seems, the board ordered the original sanction after considering information contained in Tinner's employment disciplinary file. The material was not made part of this record. The Board argues that once the determination concerning the charges against Tinner was made upon evidence in the record, his past conduct, as reflected in his employment history, could be used to decide on the appropriate penalty to impose.

■■ While Tinner's employment history might have been relevant in deciding the suitable sanction to impose (see *Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 441, 352 N.E.2d 389, 394, *aff'd*, 69 Ill. 2d 27, 370 N.E.2d 511), we cannot approve of the procedure the Board used in considering it. In order to consider any evidence for the purpose of imposing a penalty, the evidence must be part of the record (see *Caliendo*, 34 Ill. App. 3d 1072, 1076, 340 N.E.2d 560, 563), giving the party against whom it is used notice of it and an opportunity to subject it to a testing for accuracy. See *People v. Sumner* (1976), 40 Ill. App. 3d 832, 838-39, 354 N.E.2d 18, 24; *People v. Ramsey* (1975), 24 Ill. App. 3d 1038, 322 N.E.2d 547.

The order of the circuit court of Cook County, concerning Tinner's violation of Rule 38 and his violation of Rule 8 as it relates to Chambliss and Anczer is reversed; the decision of the circuit court is affirmed as it relates to the Board's finding of a violation of Rule 8 with respect to Tinner's conduct toward Shier. The cause is remanded to the Board for reconsideration of an appropriate sanction, if any, against Tinner for that violation, not inconsistent with the views expressed in this opinion.

Order affirmed in part, reversed in part, and the cause remanded with direction.

McNAMARA and SIMON, JJ., concur.