PHILIP ONESTO, Plaintiff-Appellant, *v.* THE POLICE BOARD OF THE CITY OF CHICAGO, Defendant-Appellee.

First District (3rd Division)    No. 79-1192

Opinion filed December 24, 1980.

Dan Walker and Dan Walker, Jr., both of Dan Walker Law Office, of Oak Brook, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Robert Retke and Edmund Hatfield, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Philip Onesto, filed a complaint for administrative review of the action of defendant, Police Board of the City of Chicago (Board), discharging him from the Chicago Police Department. The circuit court affirmed the findings of the Board and remanded the case to the Board to review the penalty of discharge. Upon remandment, the Board maintained the original penalty of discharge, which was affirmed by the circuit court. We reverse.

On June 11, 1977, Chicago police officers Philip Onesto and William Sims were on patrol duty. At approximately 10:40 p.m., they received a call regarding a burglary in progress. They proceeded to the address of the reported burglary and were met by a girl who directed them to a garage which someone had broken into. After arriving at the garage, Onesto ordered the person in the garage to come out. Onesto then heard the sound of breaking glass and observed the suspect attempting to escape through a window on the side of the garage. Onesto told the suspect to go back into the garage and come out the front door. The suspect lifted the front door and was handcuffed by Sims. Sims then escorted him to the police car.

Shortly after going to the police car, Sims heard the sound of breaking glass and returned to the garage with the suspect to assist Onesto. After Sims discovered that there was no further trouble, the suspect told the officers that he had broken into the garage to retrieve a motorcycle which he had sold. He explained that he wanted to retrieve the motorcycle because he had not been paid for it. The suspect and the officers proceeded to the motorcycle which was parked inside the garage. Sims bent down to get the serial number on the motorcycle. A tenant of the building approached Onesto, and Onesto spoke to him about signing a complaint. Sims and the suspect were behind him. At this point, a woman standing near the garage began screaming that the suspect was running away.

The officers looked around and saw the suspect running down the alley. Onesto started running after the suspect and screamed at him to stop or he would have to shoot. Sims was running behind Onesto. When

the suspect continued running despite the warnings, Onesto fired a shot in the air. After this warning shot, the suspect "picked up speed." Onesto then fired a second shot downward as the suspect was a few steps from an intersecting alley. The second shot apparently ricocheted off the ground and struck the suspect. The suspect later died at the hospital.

Onesto testified that he would not have been able to apprehend the suspect. Onesto also stated that he did not call for help because he did not have a radio and because he knew there were no cars in the immediate area that could quickly respond to his call.

At the time of this incident, Onesto had been a Chicago police officer for 15 years. During this period, he received approximately 50 honorable mentions and two department commendations. He was never the subject of any disciplinary action; he has one written reprimand on his record. A number of witnesses testified regarding Onesto's good reputation in the police force and in the community.

As a result of the incident in question, Onesto was charged with the violation of the following police department rules: (1) Rule 2, which prohibits any action which impedes the department's efforts to achieve its policy and goals or brings discredit upon the department; (2) Rule 6, which prohibits disobedience of an order or directive, whether written or oral; and (3) Rule 10, which prohibits inattention to duty. After a hearing, the Board found that Onesto violated all three rules and ordered that Onesto be discharged from his position. The circuit court affirmed.

Onesto contends that the findings and the decision of the Board are against the manifest weight of the evidence. In reviewing an administrative decision, the findings and conclusions of the agency on questions of fact are to be considered prima facie true and correct. (Ill. Rev. Stat. 1977, ch. 110, par. 274; *Tinner v. Police Board* (1978), 62 Ill. App. 3d 204, 208, 378 N.E.2d 1166, 1169; *Taylor v. Police Board* (1978), 62 Ill. App. 3d 486, 491, 378 N.E.2d 1160, 1165.) However, if the findings are contrary to the manifest weight of the evidence, we will not hesitate to reverse them. *Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 358-59, 307 N.E.2d 371, 375; *Fornuto v. Police Board* (1976), 38 Ill. App. 3d 950, 957, 349 N.E.2d 521, 527; *Tinner*, 62 Ill. App. 3d 204, 208, 378 N.E.2d 1160, 1169.

The Board found that Onesto violated Rule 2 in that he shot the suspect without first exhausting all available alternative means of apprehending him. It also found that he violated Rule 6 because he disobeyed a general order of the police department which provides:

"A. Members will not resort to the lawful use of firearms until all other reasonable means at their disposal to effect apprehension and control have been attempted without success. The essence of this policy is that the use of firearms in any case is a

last resort measure. Members will not unnecessarily or unreasonably endanger themselves to conform to this policy."

The following section of the same order provides:

"B. The following acts are forbidden

* * *

3. Firing warning shots to apprehend and control an individual against whom the use of deadly force is not authorized by law."

In its findings, the Board stated that Onesto failed to properly pursue the suspect and resorted to the use of firearms before all reasonable means at his disposal had been attempted without success.

■■ We agree with Onesto that these findings are against the manifest weight of the evidence. The evidence shows that Onesto did everything possible to pursue the suspect. When he realized the suspect was escaping, he immediately began to chase him. Onesto shouted at him to stop or he would have to shoot. When the suspect clearly ignored Onesto's warnings, Onesto was forced to make a split-second decision. He fired a warning shot in order to prevent the escape of the suspect, who had committed a forcible felony. At this point, the suspect "picked up speed," and Onesto fired another warning shot. Police department guidelines forbid warning shots when the use of deadly force is not authorized by law. Here, however, the use of deadly force was authorized since Onesto could have reasonably believed that the force was necessary to prevent the escape of a person who had committed a forcible felony. See Ill. Rev. Stat. 1975, ch. 38, pars. 7—5, 7—9.

The Board argues that Onesto failed to exhaust reasonable alternatives. It suggests that he could have instructed Sims, who had a radio, to call for additional police cars. However, under the circumstances, this was not a reasonable alternative. The suspect was escaping, and in all likelihood, the arrival of more police cars would not have aided in preventing his escape. Moreover, Onesto testified that he knew there were no cars in the vicinity which could get there quickly enough.

The Board also suggests that another available alternative would have been for Onesto and Sims to continue chasing the suspect because the suspect may have stumbled and fallen. Or, the Board suggests, Onesto's shouts may have attracted the attention of one of the neighbors who then could have intercepted the suspect. The Board also submits that the suspect might have decided to surrender if the officers had continued to chase him. We are not convinced by any of the Board's suggested alternatives; they are mere speculations with no reasonable basis in the evidence.

The evidence establishes that Onesto fired the warning shots after all

other reasonable means at his disposal were attempted without success. Therefore, the Board's findings relating to Onesto's pursuit of the suspect and his use of force are against the manifest weight of the evidence.

■■ The Board also found that Onesto violated Rules 2 and 10 in that he negligently allowed the suspect to escape from custody. The suspect had been handcuffed and taken to the police car by Sims. When Sims and the suspect returned to the garage, they stood around the motorcycle with Onesto. While Onesto was speaking to the tenant about signing a complaint, Sims and the suspect were standing behind him. The fact that the suspect made a dash out of the garage at this point does not establish any negligence on Onesto's part. Sims was with the suspect, and Onesto was a few feet away performing his duty. Onesto did not leave the suspect unattended at any time. Accordingly, the Board's finding that Onesto violated Rules 2 and 10 by negligently allowing the suspect to escape is against the manifest weight of the evidence.

■■ Finally, the Board found that Onesto violated Rule 6 in that on the day of the incident he carried in his service revolver Super Vel S.J. cartridges, contrary to a general order. Prior to the hearing, Onesto stipulated that he had the cartridges in his revolver. However, Onesto introduced evidence that no officer has ever been disciplined for this type of offense, and he argues that at the time in question the rule was not being enforced by the department. Before a police officer may be discharged for cause, his conduct must constitute some substantial shortcoming which renders his continuance in office detrimental to the discipline and efficiency of the service, and which the law and sound public opinion recognize as good reason for the officer to no longer hold his position. (*Tinner v. Police Board* (1978), 62 Ill. App. 3d 204, 209, 378 N.E.2d 1166, 1170; *Fornuto v. Police Board* (1976), 38 Ill. App. 3d 950, 958, 349 N.E.2d 521, 528; *Caliendo v. Goodrich* (1975), 34 Ill. App. 3d 1072, 1075-76, 340 N.E.2d 560, 562.) Here, the Board admits in its brief that "it seems unlikely that a police officer would be discharged on the sole charge" of this offense. Thus, this is plainly not the type of offense which constitutes cause for discharge. (*Cf. Fornuto*, 38 Ill. App. 3d 950, 958, 349 N.E.2d 521, 528.) Moreover, we conclude that although the Board's finding that Onesto had in his service revolver Super Vel S.J. cartridges was proper, the finding is not cause for either discharge or disciplinary action that could be sustained on appeal under the facts and circumstances of this case. There being no presumption that the facts or the evidence will appear other or different at another hearing, no useful purpose would be served by remanding the case on this point. (See *Bee Jay's Truck Stop, Inc. v. Department of Revenue* (1980), 86 Ill. App. 3d 7, 13, 407 N.E.2d 755, 760; *Prill v. City of Chicago* (1942), 317 Ill. App. 202, 215, 46 N.E.2d 119, 124.

Accordingly, the order of the circuit court affirming the discharge of Onesto is reversed.

Reversed.

McGILLICUDDY, P. J., and SIMON, J., concur.