VERLENA SIMMONS, Adm'r of the Estate of Harold Simmons, Plaintiff-Appellant, *v.* THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (1st Division)  No. 82—2537

Opinion filed October 3, 1983.

Terrence K. Hegarty, Ltd., of Chicago (Terrence K. Hegarty, of counsel), for appellant.

James D. Montgomery, Acting Corporation Counsel, of Chicago (Jerome A. Siegan and Frank W. Nagorka, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE GOLDBERG delivered the opinion of the court:

Verlena Simmons, as administrator of the estate of Harold Simmons, deceased (plaintiff), brought this action against the city of Chicago and Casey Hawkins (defendant), for injuries sustained by Harold Simmons (decedent), after decedent was shot by defendant while defendant was on duty as a Chicago police officer. Decedent, 16 years old, survived his injuries but died in an unrelated incident. A jury entered a verdict in favor of the city and defendant. The jury returned an affirmative answer to a special interrogatory which asked if defendant reasonably believed the force used by him was necessary to prevent decedent's escape and defendant reasonably believed decedent had committed or attempted to commit a forcible felony. Plaintiff appeals.

Clifton Russel testified that on May 13, 1977, he left a currency exchange in Chicago after cashing his pay check. Decedent and another "boy" came up to him and stated "this is a stickup." Decedent reached into the witness' pocket. The witness slapped decedent's hand. Decedent made a motion with his hand "indicating he had a gun. But he didn't pull no gun up." The witness ran into a delivery truck which was parked nearby. The assailants followed the witness onto the truck. They accused the witness of having a watch belonging to one of the boys. Decedent said, "Give it up or we're going to blow

your brains out." Decedent then reached into the witness' pocket and took some change and bus tokens. He saw the boys accost another person, Joe Lewis, in front of the currency exchange. The witness told defendant, "Them boys are the ones that stuck me up and they're doing it to Joe Lewis." The witness saw defendant chase the boys.

Joe Lewis testified decedent and two other men accosted him in front of the currency exchange after he had cashed his check. One stated, "This is a stickup." This man "had his hand in his bosom." Decedent reached into the witness' pocket and took some money. The witness ran into the street and screamed "robbery" three or four times. Defendant chased the boys. Defendant yelled "Halt" three times before he fired his weapon. Decedent continued to run after defendant yelled at him. The defendant returned to the witness a $20 bill and a single dollar which were held by decedent.

On cross-examination the witness stated he had not told defendant decedent robbed him prior to the shooting. The witness also stated defendant fired a total of three shots. The first two were "warning shots." On redirect examination the witness stated decedent was "running fast."

Plaintiff called defendant to testify as an adverse witness. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1102.) Clifton Russel told defendant Russel had just been accosted by three or four youths. One of them had his hand underneath his shirt and stated "give me your money or I will blow your head off." Russel told the defendant the youths had just robbed him and they presently had Joe Lewis "down on the ground." The defendant then saw three or four youths struggling with Joe Lewis in front of a currency exchange.

The defendant reported a "robbery in progress" on his police radio. He expected police cars to arrive "eventually." Defendant chased decedent into a vacant lot behind the currency exchange. The defendant thought decedent was running so fast that defendant did not believe he could catch the decedent. The defendant yelled for decedent to stop. Defendant did not yell that he was going to shoot. He yelled to decedent to stop again. Defendant then fired two warning shots into the ground. He then fired at decedent hitting him in the back. Police cars arrived shortly after decedent was shot. Decedent had a $20 bill and a $1 bill in his hand. Defendant testified he shot at decedent "because he didn't stop and I thought I would lose sight of him and his escape would be imminent."

Dr. Charles M. Sheaf testified he treated decedent for the instant gunshot wound. He performed surgery on decedent. After surgery,

decedent complained of swelling in his right leg up to the knee. Decedent told the doctor he had such swelling since childhood. Decedent had "pitting edema" from his ankle to his knee on his right leg. The decedent told the doctor that this condition existed all of his life.

On cross-examination the doctor stated he did not know if decedent had edema in his leg on May 13, 1977. When asked whether the condition would affect decedent's ability to run, the doctor stated, "I cannot imagine that a person can run faster with a swollen leg." However, he could "absolutely" not say that the condition would prevent decedent from running. In fact the doctor stated, "I am sure he [decedent] could run."

Plaintiff testified she is the mother of decedent. She stated decedent "was never a very good runner" because " he had problems with his ankles." She had never taken decedent to a doctor for treatment of the condition.

Loretta Cato, decedent's sister, testified decedent ran slowly. Generally, somebody would have to break in new shoes for decedent.

I

■ Section 7—5 of the Illinois Criminal Code provides in part (Ill. Rev. Stat. 1977, ch. 38, par. 7—5(a)):

"However, he [peace officer] is justified in using force likely to cause death or great bodily harm only when he reasonably believes that such force is necessary to prevent death or great bodily harm to himself or such other person, or when he reasonably believes both that:

(1) Such force is necessary to prevent the arrest from being defeated by resistance or escape; and

(2) The person to be arrested has committed or attempted a forcible felony or is attempting to escape by use of a deadly weapon, or otherwise indicates that he will endanger human life or inflict great bodily harm unless arrested without delay."

We have found no case in which the constitutionality of this statute was specifically adjudicated. However, the enactment has been applied in a number of instances by this court (see, *e.g., Onesto v. Police Board* (1980), 92 Ill. App. 3d 183, 416 N.E.2d 13; *LaMonte v. City of Belleville* (1976), 41 Ill. App. 3d 697, 355 N.E.2d 70; *Fornuto v. Police Board* (1976), 38 Ill. App. 3d 950, 349 N.E.2d 521, *appeal denied* (1976), 63 Ill. 2d 556), as well as the Federal courts. *Silverman v. Ballantine* (7th Cir. 1982), 694 F.2d 1091; *Rodriguez v. Schweiger* (N.D. Ill. 1982), 534 F. Supp. 229.

In *People v. Klein* (1922), 305 Ill. 141, 146-47, 137 N.E. 145, the supreme court outlined the common law rule applicable to the use of deadly force by a police officer in effectuating an arrest:

"An officer, generally, may use a deadly weapon, even to the extent of taking life, if necessary to effect the arrest of a felon, for the reason that the safety of the public is endangered while such felon is at large; but the rule, by the great weight of authority both in this country and in England, is, that except in self-defense an officer may not use a deadly weapon or take life to effect an arrest for a misdemeanor, whether his purpose is to kill or merely to stop the other's flight. This is true, even though the offender cannot be taken otherwise."

By limiting the authority of police officers to use deadly force only against offenders engaged in a "forcible felony," section 7—5 actually offers police officers a power more curtailed than the common law permitted. See Comment, *Deadly Force to Arrest: Triggering Constitutional Review*, 11 Harv. Civ. Rights—Civ. Lib. L. Rev. 361, 368 (1976).

To the best of our knowledge no statute of any other State which so proscribes this common law rule has been challenged on constitutional grounds. In fact, courts have generally upheld the broader common law authority to use deadly force in effectuating the arrest of a felon. See, *e.g., Wiley v. Memphis Police Department* (6th Cir. 1977), 548 F.2d 1247, *cert. denied* (1977), 434 U.S. 822, 54 L. Ed. 2d 78, 98 S. Ct. 65; *Jones v. Marshall* (2d Cir. 1975), 528 F.2d 132; *Cunningham v. Ellington* (W.D. Tenn. 1971), 323 F. Supp. 1072; *cf. Wolfer v. Thaler* (5th Cir. 1976), 525 F.2d 977, *cert. denied* (1976), 425 U.S. 975, 48 L. Ed. 2d 800, 96 S. Ct. 2178; *Davis v. Balson* (N.D. Ohio 1978), 461 F. Supp. 842.

The single case in which the local law regarding the use of deadly force in effectuating arrest of a felon was held to be unconstitutional is *Mattis v. Schnarr* (8th Cir. 1976), 547 F.2d 1007, *vacated as advisory opinion sub nom. Ashcroft v. Mattis* (1977), 431 U.S. 171, 52 L. Ed. 2d 219, 97 S. Ct. 1739. In *Mattis* the United States Court of Appeals for the Eighth Circuit declared unconstitutional the Missouri statute authorizing the use of deadly force "against a fleeing felon who has not used deadly force in the commission of the felony and whom the officer does not reasonably believe will use deadly force against the officer or others if not immediately apprehended." 547 F.2d 1007, 1009.

The *Mattis* opinion elicited a strong dissent from three judges. The dissent stated (547 F.2d 1007, 1021 (Gibson, C.J., dissenting)):

"The majority opinion recognizes that the Missouri statutes at issue here are merely a codification of the common law dating from Fifteenth Century England and that at least 24 states have similar codifications of the common law currently in force. \*\*\* Thus, after a background of five centuries of the common law and two centuries of this country's existence, lo and behold the majority, *ipse dixit*, has held that the common law principles embodied in these Missouri statutes are violative of the Due Process Clause of our Constitution. While acknowledging that other courts have reached a contrary decision, the majority shows no interest in the direction taken by other judicial authorities and turns elsewhere for guidance."

Furthermore, *Mattis* has been criticized and expressly rejected by another circuit court. See *Wiley v. Memphis Police Department* (6th Cir. 1977), 548 F.2d 1247, 1252-53.

In any event we believe the statute at issue, as applied to the case at bar, satisfies even the standard established by the majority in *Mattis*. Defendant's testimony reveals he believed the decedent was armed. Defendant was told decedent threatened to shoot his robbery victim and decedent indicated through his actions and statements that he was armed with a gun. Defendant also observed the decedent use force in effectuating a second robbery. These factors demonstrate strongly that defendant was acting under a reasonable belief and apprehension that decedent might well use deadly force against another victim including the officer himself. The statute here is beyond valid criticism on constitutional grounds.

## II

■ There is no dispute that when decedent was shot he was fleeing after committing robbery. Robbery is classified as a forcible felony in Illinois. (Ill. Rev. Stat. 1977, ch. 38, par. 2—8.) Therefore, the only disputed issue for the trier of fact to determine was whether the force used by defendant was reasonable under the particular circumstances of the case at bar.

The determination of the reasonability of the force used by a peace officer in the performance of his duties is a question of fact to be resolved by the jury. (*Schnepf v. Grubb* (1970), 125 Ill. App. 2d 432, 261 N.E.2d 47, *appeal denied* (1970), 44 Ill. 2d 587.) In such situations, a reviewing court will not reverse the determination of the jury "unless a conclusion opposite to that of the jury is clearly evident and plain." *Schnepf v. Grubb* (1970), 125 Ill. App. 2d 432, 439. See also, *Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 423, 412 N.E.2d

447.

In *Onesto v. Police Board* (1980), 92 Ill. App. 3d 183, 416 N.E.2d 13, the court reversed the finding that a police officer used deadly force unreasonably in stopping a fleeing felon. In *Onesto*, a police officer killed a man who was fleeing after burglarizing a garage. The officer called to the offender to stop and believed he would not be able to apprehend the offender on foot. The court determined that the action of the officer in firing his weapon to stop the forcible felon was reasonable as a matter of law. 92 Ill. App. 3d 183, 186-87.

In the case at bar, the jury had ample evidence from which to conclude defendant acted reasonably and in accordance with law. Defendant testified he believed decedent was armed, he believed decedent would effect an escape, and he ordered decedent to halt and fired two warning shots before firing at decedent. We will not disturb the determination of the jury.

### III

■ Plaintiff argues defense counsel acted improperly in commenting extensively on decedent's involvement in criminal activity at the time of the shooting; in questioning plaintiff concerning her relationship with her current husband before they were married; in disputing plaintiff's evidence regarding the condition of decedent's leg and his ability to run; and in counsel's alleged insinuation that plaintiff's attorney manufactured evidence. Plaintiff argues that although he did not object to comments by defense counsel in final argument, these matters were in effect plain error. We have carefully considered these contentions. We find no error in this regard. After reviewing all of these acts of alleged misconduct, we conclude that none of them denied plaintiff a fair and impartial trial.

Decedent's criminal activity immediately prior to the shooting was not disputed by plaintiff or any witness at trial. Decedent's participation in forcible felonies was of critical importance in the determination of the reasonableness of defendant's actions. Defense counsel was clearly entitled, in fact it was his duty, to comment upon these facts. See *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 254 N.E.2d 453, *cert. denied* (1970), 398 U.S. 905, 26 L. Ed. 2d 65, 90 S. Ct. 1697.

As regards questions to plaintiff concerning her relationship with her husband, plaintiff's objection to that line of questioning was promptly sustained by the trial court. We find no prejudice to plaintiff. See *Looft v. Missouri Pacific R.R. Co.* (1982), 104 Ill. App. 3d 152, 158, 432 N.E.2d 1152.

■ We believe counsel's comments disputing the alleged condition

of decedent's leg and his ability to run were within the bounds of proper argument. (See *Levenson v. Lake-To-Lake Dairy Cooperative* (1979), 76 Ill. App. 3d 526, 538-39, 394 N.E.2d 1359, *appeal denied* (1980), 79 Ill. 2d 626.) There was no direct evidence that decedent had this condition at the time of the shooting. In fact, there was considerable evidence that decedent could, and indeed did, run with a good amount of speed.

■ Finally, defense counsel questioned a nurse about a copy of a bill allegedly sent to decedent after his stay at the hospital. Counsel asked the witness whether she had an independent recollection of the bill and whether she produced the copy at the request of plaintiff's attorney. We find the questions proper. Counsel was merely investigating the authenticity of an offered exhibit as his duty required.

## IV

■ ■ Plaintiff argues the trial court erred in allowing the robbery victims to testify about the robberies themselves; in allowing defendant to testify in police uniform; and in denying plaintiff's request to use overhead slides to accompany the testimony of Dr. Sheaf and defendant. We find no error here.

Initially, plaintiff failed to object specifically to the testimony of the robbery victims and therefore has waived objections to that testimony. (*Shell Oil Co. v. Department of Revenue* (1983), 95 Ill. 2d 541, 550, 449 N.E.2d 65; *Joynt v. Barnes* (1979), 71 Ill. App. 3d 187, 204, 388 N.E.2d 1298, *appeal denied* (1979), 79 Ill. 2d 611.) In addition, the testimony was relevant to explain the state of mind of the victims, and how they would have appeared to defendant when they recounted the events to him. These factors became relevant in determining whether defendant had a reasonable belief that decedent had committed a forcible felony and whether decedent was dangerous.

■ Likewise we find no error in the ruling by the trial court allowing defendant to wear his uniform during his testimony. There is no dispute that defendant was active as a police officer. In fact plaintiff sued defendant in his capacity of a police officer. Plaintiff does not indicate and we do not see how plaintiff could possibly have been prejudiced through the wearing of the defendant's uniform.

■ The admission of demonstrative evidence is within the sound discretion of the trial court. (*Lake County Forest Preserve District v. Vernon Hills Development Corp.* (1980), 85 Ill. App. 3d 241, 245-46, 406 N.E.2d 611, *aff'd and remanded* (1982), 92 Ill. 2d 72.) Furthermore, the evidence plaintiff wished to produce through the overhead slides or transparencies was cumulative to the testimony of Dr. Sheaf

and defendant. The admission of cumulative evidence is within the discretion of the trial court. (*Christopherson v. Hyster Co.* (1978), 58 Ill. App. 3d 791, 805, 374 N.E.2d 858, *appeal denied* (1978), 71 Ill. 2d 607.) We find no abuse of discretion in these evidentiary rulings.

V

Finally, plaintiff argues the trial judge made various comments which prejudiced the plaintiff's case in the minds of the jurors. We disagree.

■ We have perused the entire record presented to us. In our opinion the trial judge acted with commendable decorum, patience and even-handedness. A trial judge must be allowed wide latitude in the conduct of a trial. (*Vinke v. Artim Transportation System, Inc.* (1980), 87 Ill. App. 3d 400, 412, 408 N.E.2d 1112, *appeal denied* (1980), 81 Ill. 2d 606.) We have not found any comment by the trial judge which we believe could have unduly affected the outcome of the trial. *Babcock v. Chesapeake & Ohio Ry. Co.* (1979), 83 Ill. App. 3d 919, 404 N.E.2d 265, *appeal denied* (1980), 81 Ill. 2d 589.

For these reasons the judgment appealed from is affirmed.

Judgment affirmed.

McGLOON and CAMPBELL, JJ., concur.