ELSA LUDGIN, Plaintiff-Appellee, v. JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY *et al.*, Defendants-Appellants.

First District (2nd Division) No. 85—2374

Opinion filed June 30, 1986.—Rehearing denied July 22, 1986.

Matyas & Norris and McKenna, Storer, Rowe, White & Farrug, both of Chicago (Harlene Matyas, Robert S. Soderstrom, Charles E. Menges, and Sara E. Cook, of counsel), for appellants.

Keck, Mahin & Cate, of Chicago (Robert J. Schuckit and David I. Feldman, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court.

Plaintiff sued defendants John Hancock Mutual Life Insurance Company (Hancock) and Otis Elevator Company (Otis) under negligence and *re ipsa loquitur* theories after she was injured while riding an escalator in the John Hancock building in Chicago. Defendant Hancock filed contribution and breach-of-contract claims against defendant Otis. A jury found against both defendants, allocating 50% fault to each, and awarding plaintiff $18,750. The trial court entered a directed verdict in favor of Otis on Hancock's counterclaims. Defendants appeal from the trial court's order entering judgment and from its denial of their post-trial motions. Hancock also appeals from the trial court's disposition of Hancock's counterclaims against Otis.

On November 12, 1981, at 4 p.m., plaintiff, Elsa Ludgin, an 89-year-old tenant of the John Hancock building, finished shopping in a store on the lower level of the building and approached an up escalator. She testified that she stepped onto the escalator and put her hand on the right handrail. The steps were moving but the handrail was not. She was thrown back, and sustained a fractured left clavicle and bruises and contusions to her head and left side of her body. Ms. Ludgin testified that she still has pain in her left side and arm.

Dr. Jerome Strauss, her physician, testified that on November 13, 1981, he had plaintiff admitted to the hospital for five days for treatment of the injuries. She was readmitted two weeks later for unrelated reasons, although an orthopedist treated her during this second hospi-

talization for the injury suffered in the fall. Dr. Strauss opined that plaintiff was now unable to raise her arm above a certain level and was unable to lift anything.

Richard Gregory testified as plaintiff's expert witness. He stated possible causes for the escalator's malfunction were too much or too little tension, a handrail coming off the handrail guide, or drive-mechanism breakage. In this incident the handrail stopped moving because it was off the handrail guide. He noted that a few months prior to plaintiff's accident the left handrail of the escalator had been replaced. If the rails were equally worn, wear might have been part of the reason the right handrail was off. A person can remove a handrail with some ingenuity and strength, but it requires a sharp force. He had no opinion about the adequacy of the maintenance of either the handrail or the handrail-tension system at the time of this occurrence; however, monthly testing by having the rail pull up a 175 to 180-pound person is adequate.

Clarence Green was called as an adverse witness by Otis. He testified that he was employed by Sudler & Company, the managing agent for Hancock, to monitor the escalator and elevator systems in the building. The engineering department of the building turns the escalators on and off, and decides when the escalators run. Green contacts Otis, which maintains a repairman in the building, for any problems or malfunctions of the escalators. At approximately 4 p.m. on the day plaintiff fell, he rode the escalator, realized the handrail was not moving, and pressed the emergency stop when he reached the first floor. He called Otis and then attended to plaintiff.

Donald Swenson testified that he was an Otis employee at the time of plaintiff's accident, supervising the Otis maintenance people in the Hancock building. Otis' full maintenance contract with Hancock provides for Otis to inspect and service the Hancock building escalators weekly and to replace worn parts, including handrail. Otis maintains and repairs the escalators, but does not operate them. Swenson opined that the handrail had been pulled off the escalator by hand because there was no evidence of wear. Since no smoke was coming from the drive shaft, he believed the handrail had been off the guide not longer than 15 to 20 minutes. He stated that an escalator with a dead handrail is not in a proper and safe operating condition.

Hancock called Mark Stark, an employee of Sudler & Company. Stark testified that Hancock owns the building and has a management contract with Sudler & Company. Sudler employed no one other than Otis to maintain the escalators, but Sudler employees turn the escalators on and off.

John Termini, an Otis mechanic, testified that he services the escalators in the building. He had not worked on the relevant escalator the day before plaintiff fell, had never pulled the right handrail off, had never had a problem involving the right handrail, and had observed no problem when he rode the escalator at 3:30 on the day of the accident. Around 4:30 on that same day, he received a phone call from Green indicating Green had turned the escalator off because of a problem with the handrail. Termini saw the handrail was off and tried to put it back on.

The case went to the jury, who returned a verdict of $18,750 against both defendants and apportioned fault as 50% against each of them. The trial court denied motions for a judgment notwithstanding the verdict by both defendants, but entered a remittitur in the amount of $560 on a room charge plaintiff incurred during her second hospitalization. The trial court entered a directed verdict in favor of Otis on Hancock's counterclaims.

■ Defendants initially contend that the trial court's opening remarks prior to conducting *voir dire* were highly prejudicial and constituted reversible error. However, upon reviewing the *voir dire* and the record in its entirety, we do not believe that these comments resulted in a denial of a fair trial.

A trial judge must be given wide latitude in the conduct of a trial. (*Simmons v. City of Chicago* (1983), 118 Ill. App. 3d 676, 685, 455 N.E.2d 232.) Comments only result in a denial of a fair trial if they operate to the prejudice of defendants or unduly affect the outcome of the trial. (*Babcock v. Chesapeake & Ohio Ry. Co.* (1979), 83 Ill. App. 3d 919, 923, 404 N.E.2d 265.) While we agree with defendants that the trial judge must be conscious of his dominance and influence in the courtroom (*Ryan v. Blakey* (1979), 71 Ill. App. 3d 339, 351, 389 N.E.2d 604), many of the cases defendants cite as requiring reversal involve improper utilization of witness testimony, contradictory jury instructions, and trial-counsel misconduct. Prejudice must be shown by trial conduct, and may not be presumed or inferred from the subjective views of the judge. (*United States v. Bolden* (7th Cir. 1965), 355 F.2d 453, 456, *cert. denied* (1966), 384 U.S. 1012, 16 L. Ed. 2d 1018, 88 S. Ct. 1919.) In the case at bar, neither the judge's conduct nor his views unduly affected the outcome of the trial.

■ Defendant Hancock next asserts that the court refused to allow it to present its defense that it had no responsibility for maintenance of the escalator or for day-to-day operation of the building. Hancock argues that Otis was an independent contractor, not an employee, and that Hancock had no responsibility for Otis' actions. Defendant's

contentions are not persuasive.

It is clear from the testimonies of defendants' witnesses that Hancock was not actively involved in servicing the escalator and in replacing its parts. Likewise, evidence was presented that Hancock had contracted management of the building to its agent, Sudler & Company. The record thus does not support Hancock's claim that it was precluded from presenting such evidence to the jury. Although the trial court did indeed limit Hancock's attempts to emphasize that Hancock employees were not directly operating the building, we do not find that this was improper. Through its agent, Hancock did retain control of the management of the building. Likewise, unlike the defendants in cases which Hancock cites, Hancock retained control over the overall operation of the escalators, determining when to run them and contacting Otis when they malfunctioned.

Hancock owed plaintiff business invitee the duty to use reasonable care and caution under all the circumstances to keep the premises reasonably safe for her use. (*Tolman v. Wieboldt Stores, Inc.* (1967), 38 Ill. 2d 519, 525, 233 N.E.2d 33.) Because Otis had a maintenance contract with Hancock to service and repair the escalator plaintiff was injured on, Hancock's liability arose from this duty to maintain a safe place for its business invitees and from its ownership and control, through its agent, of the operation of the escalator. *Stach v. Sears, Roebuck & Co.* (1981), 102 Ill. App. 3d 397, 413, 429 N.E.2d 1242.

■ However, defendants contend that the trial court erred in denying their motions for a directed verdict or for judgment notwithstanding the verdict because plaintiff's proof of defendants' negligence was insufficient. Such motions should be granted only when all the evidence, viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) Under the facts here, the negligence of the defendants was a question of fact for the jury and, applying the rule, we cannot say that the verdict for plaintiff could not stand.

Defendants do not argue the fact that the handrail was not operating or that this malfunction demonstrated that the escalator was not reasonably safe. Instead, Hancock urges that plaintiff did not prove that Hancock should have known of the defect and Otis asserts that plaintiff's expert could not say whether the escalator had been adequately maintained.

■ As to Hancock, the premise must be that no sound reason exists for excusing one from liability for injuries when he permits his pa-

trons to use defective escalators over which they have no control. (See *River v. Atlantic & Pacific Tea Co.* (1961), 31 Ill. App. 2d 232, 237, 175 N.E.2d 593.) The escalator was likely to be used by large numbers of persons of all ages and of varying degrees of physical strength and activity. Faced with this knowledge and exercising ordinary care, Hancock could have known that the escalator required constant inspection to insure that the premises were reasonably safe. (See *Chapman v. Foggy* (1978), 59 Ill. App. 3d 552, 556, 375 N.E.2d 865.) Yet the evidence showed that Hancock's agents, who were responsible for operating the escalators and notifying Otis when the escalators needed repair, could not see from their various stations the entire escalator's movement. The evidence was conflicting on how long the handrail had been malfunctioning, and it is the function of the jury to weigh conflicting evidence. (*McCommons v. Moorman Manufacturing* (1980), 81 Ill. App. 3d 708, 711, 401 N.E.2d 1354.) The jury could reasonably have found that Hancock was negligent.

Similarly, viewed most advantageously to plaintiff, the evidence does not so overwhelmingly favor Otis that the verdict cannot stand. Plaintiff's expert gave various possible causes for the right handrail stopping, all attributable to improper or inadequate maintenance. He noted that the left handrail on the same escalator had been replaced because of wear, while the right-hand one had not been replaced. Otis' evidence of its inspections and maintenance procedures conflicted with this testimony. We cannot say as a matter of law that the judgment entered upon the jury's verdict again Otis must be reversed.

Both defendants argue that the trial court improperly allowed the jury to consider the doctrine of *res ipsa loquitur.* Hancock contends that plaintiff established no factual basis as to its control or negligence. We have already addressed these arguments, and have found them unpersuasive. Otis additionally states that plaintiff failed to establish that her injury would not have occurred absent Otis' negligence because vandals might have removed the handrail.

The doctrine of *res ipsa loquitur* allows the trier of fact to draw an inference of negligence from circumstantial evidence. Plaintiff must show she was injured (1) in an occurrence which would not have occurred in the absence of negligence, (2) by an instrumentality or agency under the management or control of the defendant or defendants, and (3) under circumstances which were not due to any voluntary act or negligence on the part of plaintiff. *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 394, 415 N.E.2d 397.

The issue here is whether the plaintiff introduced enough evi-

dence that the injury would not have happened, ordinarily, without negligence. Plaintiff's expert testified that reasons for a handrail stopping included too much or too little tension, the handrail coming off the handrail guide, and drive-mechanism breakage. When asked to describe how a mechanic removed the handrail from its guide, he answered that a handrail is a C-shaped piece that goes over a handrail guide, that one stopped the escalator, grabbed the handrail, wrapped fingers around it, pulled it and pried it up. Immediately after this explanation, he testified that it would take ingenuity and strength for a lay person to accomplish. A reasonable person could conclude that the expert believed the escalator's malfunction could not, more probably than not, have been caused by a vandal. The expert's testimony did not constitute proof that the defect in the escalator could never happen without negligence, but under the doctrine of *res ipsa loquitur* plaintiff is not required to conclusively prove negligence. (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 9, 402 N.E.2d 216.) The evidence made it more probable that Otis' negligence resulted in the escalator's defective condition. Consequently, it was not error for the trial court to send the case to the jury under the *res ipsa loquitur* theory.

The defendants also argue that the trial court erred in admitting $560 of a hospital bill covering a part of plaintiff's room charges during a second hospitalization for various conditions. Defendants contend that plaintiff may have been treated during this hospitalization for injuries arising from the escalator accident, but any portion of the room charges were inadmissible because her own physician testified that plaintiff was admitted for a condition unrelated to the accident injuries. During defendants' post-trial motions, the trial court reversed its earlier decision allowing the $560 bill and offered a remittitur in that amount. Defendants now urge that the $560 bill inflated the jury's overall evaluation of the case which the $560 remittitur was insufficient to cure. We disagree.

 Fixing the amount of damages is preeminently the function of the trier of fact. (*King v. City of Chicago* (1978), 66 Ill. App. 3d 356, 359, 384 N.E.2d 22.) The precise dollar amount of compensation for pain and suffering or some type of permanent disability is not necessarily related to the amount of medical expenses incurred. (*Kottmeyer v. Consolidated Rail Corp.* (1981), 98 Ill. App. 3d 365, 379, 424 N.E.2d 345.) Neither are medical bills conclusive as to the appropriate size of a jury verdict. *Lewis v. Northern Illinois Gas Co.* (1981), 97 Ill. App. 3d 227, 231, 422 N.E.2d 889.

Cases defendants cite in which remittiturs were deemed insufficient and new trials were required are distinguishable from the instant

fact situation. For instance, in *Panepinto v. Morrison Hotel, Inc.* (1966), 71 Ill. App. 2d 319, 218 N.E.2d 880, a new trial was granted because we found the $100,000 verdict for plaintiff to be against the manifest weight of the evidence. Our itemization of the improper evidence at trial included erroneous instructions on damages, testimony of an expert witness who was incompetent to testify, and a lack of foundation to establish the qualifications of yet a different expert witness.

Any error which may have occurred in the case at bar is adequately cured by the remittitur. The record does not support defendant Otis' charge that passion and prejudice tainted the jury. The amount the jury fixed for disability and pain and suffering is well within the flexible limits of fair and reasonable compensation, and does not warrant being set aside by a court of review. *Barrar v. Clark* (1985), 136 Ill. App. 3d 715, 720-21, 483 N.E.2d 630.

Neither do we agree with Otis that one of plaintiff's instructions was repetitive and prejudicial. The complained of instruction provided in pertinent part:

> The plaintiff claims that she was injured and sustained damage, and that the defendants were negligent in one or more of the following respects: by failing to keep the escalator in proper repair; by failing to keep the escalator in proper and safe condition when operating.

The instruction appropriately refers to two separate alleged acts of negligence. The act of repair is distinct from the act of operating the escalator safely while passengers use it. We do not believe the defendant was prejudiced, since no point was unduly emphasized and the jury is not likely to have been confused.

Finally, we reject Hancock's contention that the trial court erred in directing a verdict in favor of Otis on Hancock's counterclaims. Hancock's first counterclaim alleged breach of contract and requested reimbursement for damages Hancock might be assessed. This claim sounds in contractual indemnity, not in breach of contract. (*Smith v. Clark Equipment Co.* (1985), 136 Ill. App. 3d 800, 804, 483 N.E.2d 1006.) Hancock, however, has not attempted to establish specific contractual language supporting indemnity between the parties, and no such language appears to exist. Therefore, the trial court properly directed a verdict on Hancock's claims of breach of contract and contribution.

Judgment affirmed.

BILANDIC, P.J., and SCARIANO, J., concur.